

**IT IS ORDERED as set forth below:**

**Date: March 30, 2018**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| ROHRIG INVESTMENTS, LP, | CASE NO. 13-53483-BEM |
| Debtor. | |
| | CHAPTER 11 |
| ROHRIG INVESTMENTS, LP, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 16-5151-BEM |
| KNUCKLE PARTNERSHIP, LLLP, 3110 ROSWELL ROAD, LLC, 3116-3136 ROSWELL ROAD LLC, and ROBERT C. LOUDERMILK, JR., | |
| Defendants. | |

### ORDER ON (1) PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION TO DISMISS AND TIME TO AMEND COMPLAINT; AND (2) DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

## I. Background

Plaintiff filed this adversary proceeding on July 6, 2016 seeking specific performance or, alternatively, damages for breach of contract. [Doc. 1 (the "Original Complaint")]. Defendants filed motions to dismiss the Original Complaint. [Docs. 11, 12]. The Court granted the motions to dismiss with leave for Plaintiff to make limited amendments to the Complaint (the "Dismissal Order"). [Doc. 21]. Plaintiff filed a motion to reconsider the order granting the motions to dismiss (the "Motion to Reconsider") [Doc. 23] and filed an amended complaint (the "Amended Complaint"). [Doc. 30]. Defendants filed motions to dismiss the Amended Complaint (the "Second Motions to Dismiss") [Docs. 40, 41]. The Court herein considers Plaintiff's Motion to Reconsider and Defendants' Second Motions to Dismiss.

The parties and other relevant persons in this proceeding are as follows:

- Rohrig Investments, LP ("Plaintiff"): the Debtor-Plaintiff in this proceeding;

- Knuckle Partnership, LLLP ("Knuckle"), 3116-3136 Roswell Road, LLC ("3116"), and Robert C. Loudermilk, Jr. ("Robin" or "Robin Loudermilk" and with Knuckle and 3116, the "Loudermilk Parties"): Defendants in this proceeding;

- 3110 Roswell Road, LLC ("3110" and with the Loudermilk Parties, the "Defendants"): a Defendant in this proceeding;

- George W. Rohrig, Jr. ("George" or "George Rohrig" and with Plaintiff, the "Rohrig Parties"): a principal of Plaintiff;

- R. Charles Loudermilk, Sr. ("Charlie" or "Charlie Loudermilk"): a principal of 3110.

Plaintiff's Original Complaint contained two counts—one for specific performance and one for breach of contract. In summary, the Original Complaint alleged as follows: 3116 owns real property in the Buckhead District of Atlanta, which it agreed to sell for more than $10 million. The deal was temporarily halted when Plaintiff filed in the county real property records a document asserting an interest in parking rights in the property. Thereafter,

2

3116 filed an adversary proceeding against Plaintiff and George Rohrig to remove the affidavit from the public record (the "Parking Rights Dispute" or the "Parking Rights AP"). The parties settled the matter, along with other disputes, under terms set forth in a settlement agreement. [Doc. 30-1, Ex. 6, hereinafter the "Agreement" or the "Settlement Agreement"]. The Settlement Agreement required the Loudermilk Parties to obtain from 3110 and convey to Plaintiff a deed to the 8 at 8 office building (the "8 at 8 Property"), an extension of the property lines for the 8 at 8 Property (the "Disputed Property"), and an easement for a pedestrian walkway (the "Breezeway," and with the 8 at 8 Property and the Disputed Property, the "8 at 8 Properties"). Plaintiff complied with all its obligations under the Settlement Agreement, but Defendants failed to convey the entirety of the 8 at 8 Properties. The dispute primarily centers on the language "to the extent it is legally possible, the Loudermilk Parties will obtain … and convey … an extension of the property lines for the 8 at 8 Property westward to Early Street …." [Settlement Agreement § 3.0].

The Court granted Defendants' motions to dismiss the Original Complaint in their entirely because the Court found that: (1) it was not legally possible for the Loudermilk Parties to convey all of the Disputed Property when the property owner refused to agree to the transfer, (2) the description of a portion of the property to be conveyed was not adequately described, and (3) Plaintiffs failed to allege sufficient facts to state a claim against 3110 based on an agency relationship between the Loudermilk Parties and 3110. [Doc. 21]. The Dismissal Order further granted Plaintiff limited leave to amend the complaint. In the Amended Complaint, Plaintiff has supplemented its allegations to address the agency question, the sufficiency of the description, generally provide greater detail, and has added equitable claims against Defendants. The Amended Complaint includes the following documents attached as exhibits: (1) 2006

Consolidation Map; (2) 2007 Boundary Survey; (3) Limited Warranty Deed to 3110 Roswell

Road, LLC; (4) Limited Warranty Deed to Rohrig Investments, LP; (5) 2007 Valentino Survey;

(6) Settlement Order and Settlement Agreement; (7) 2014 Rohrig Survey (with Valentino email

exchange); (8) email exchange from Mr. Teague to Mr. Howard to Mr. Frasier; (9) Valentino

email to Rohrig Investments with Replat Survey; (10) email from Mr. Howard to Mr. Frasier by

way of Valentino; (11) Section 3.0 Letter from Mike King; and (12) Proposed Deed for Specific

Performance. In addition, the Amended Complaint contains lengthy quotations from the

transcript of a hearing held in this Court on October 28, 2014. A copy of the transcript is filed in

the main bankruptcy case. [Case No. 13-53483, Doc. 1121, hereinafter "Hearing Tr."].

       The Amended Complaint includes counts for specific performance against all

Defendants; breach of contract against all Defendants; breach of contract against the Loudermilk

Parties; quantum meriut and unjust enrichment against 3110; and reformation of the Settlement

Agreement.

## II. Procedural Issues

       As a preliminary matter, Defendants contend the Motion to Reconsider is moot

because the Amended Complaint supersedes the original complaint. [Doc. 52 at 2, 53].

Defendants are correct in stating the general rule. *Pintando v. Miami-Dade Housing Agency*, 501

F.3d 1241, 1243 (11th Cir. 2007). However, the general rule does not address the effect of an

amended complaint on a pending motion to reconsider dismissal. "A rule that a party waives all

objections to the court's dismissal if the party elects to amend is too mechanical …. Without

more, the action of the amending party should not result in completely denying the right to

appeal the court's ruling." 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.); *see also Varnes v. Local 91,*

*Glass Bottle Blowers Ass'n of U.S and Canada*, 674 F.2d 1365, 1370 (11th Cir. 1982) (a plaintiff

is "not barred, by consenting to the dismissal [of his complaint for failure to state a claim] and filing the amended complaint, from raising on appeal the correctness of the dismissal order …."); *Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235, 1238 (5th Cir. 1978)[1], *vacated on other grounds*, 444 U.S. 959, 100 S. Ct. 442 (1979), ("plaintiff, by filing an amended complaint after a dismissal with leave to amend, was not barred from raising on appeal the correctness of the dismissal order."). Usually this issue arises when the plaintiff opts not to reassert a dismissed claim in the amended complaint. Here, all of Plaintiff's claims from the Original Complaint are subsumed in the Amended Complaint. Nevertheless, in an abundance of caution and to preserve any appeal rights held by Plaintiff, the Court will consider the Motion to Reconsider in conjunction with the Second Motions to Dismiss as all the issues raised in the Motion to Reconsider are relevant to determination of the Second Motions to Dismiss.

## III. Legal Standards

### A. Standard for Reconsideration

Plaintiff's Motion to Reconsider seeks to alter or amend the order granting the motions to dismiss pursuant to Fed. R. Civ. P. 59(e), made applicable in adversary proceedings by Fed. R. Bankr. P. 9023. The Motion was filed within 14 days after entry of the Dismissal Order and is therefore timely. Fed. R. Bankr. P. 9023. The relief sought by Plaintiff is rare and granted only upon a showing of "newly-discovered evidence or manifest errors of law or fact." *Kellogg v. Schreiber (In re Kellogg)*, 197 F.3d 1116, 1119 (11th Cir.1999); *Hearn v. Intern'l Business Machines*, 588 Fed. App'x 954, 958 (11th Cir. 2014). Such motions cannot be used to relitigate issues already decided, to pad the record for an appeal, to substitute for an appeal, or to raise arguments which were or could have been raised before judgment was issued. *Kellogg*, 197

---

[1] Decisions of the Fifth Circuit Court of Appeals issued on or before September 30, 1981 have been adopted as binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

F.3d at 1120; *In re McDaniel*, 217 B.R. 348, 350–51 (Bankr. N.D. Ga. 1998) (Drake, J.); *In re Oak Brook Apartments of Henrico Cnty., Ltd.*, 126 B.R. 535, 536 (Bankr. S.D. Ohio 1991); *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992). Nor should such motions be used "to test whether the Court will change its mind." *Brogdon v. National Healthcare Corp.*, 103 F. Supp.2d 1322, 1338 (N.D. Ga. 2000) (citing *McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1223 (M.D. Ga. 1997); *Paper Recycling, Inc. v. Amoco Oil Co.*, 856 F. Supp. 671, 678 (N.D. Ga. 1993)).

### B. Standard for Dismissal

Defendants seek dismissal of the Amended Complaint under Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b) for failure to state a claim upon which relief can be granted. Pursuant to Fed. R. Civ. P. 8(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7008, "A pleading that states a claim for relief must contain: … (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]" To survive a motion to dismiss for failure to state a claim, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' … A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citations omitted). Although the complaint "does not need detailed factual allegations" to survive a motion to dismiss, it "requires more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*, 127 S. Ct. at 1965. Consequently, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993); *Rounds v. Genzyme Corp.*, 440 Fed. App'x 753, 756-57 (11th Cir. 2011).

## IV. Factual Allegations

On February 19, 2013, Plaintiff and five of its affiliates filed Chapter 11 petitions. [Doc. 27 ¶ 10]. Plaintiff, Knuckle, and Robin Loudermilk owned membership interests in two limited liability companies: Loudermilk/Rohrig, LLC and 335 West Ponce Shoppes, LLC. [*Id.* ¶ 11]. Plaintiff and Knuckle owned membership interests in Loudermilk/Rohrig 3261, LLC (with Loudermilk/Rohrig, LLC and 335 West Ponce Shoppes, LLC, the "LLCs"). [*Id.*] The LLCs own various real estate properties. [*Id.* ¶ 16].

Charlie Loudermilk, who is the father of Robin, is an original member of the LLCs and made significant capitalization loans to Loudermilk/Rohrig, LLC and Loudermilk/Rohrig 3261, LLC. [*Id.* ¶ 12, 14]. Charlie transferred his interest in the LLCs to Knuckle on December 14, 2010. [*Id.* ¶ 12-14]. Plaintiff alleges on information and belief that Charlie has a direct or indirect ownership in Knuckle on account of transferring his interests in the LLCs to Knuckle. [*Id.* ¶ 15].

On the petition date, Plaintiff and Robin Loudermilk were co-managing members of the LLCs. [*Id.* ¶ 17]. As a result of Plaintiff's bankruptcy filing, Knuckle and Robin Loudermilk asserted that Plaintiff had become dissociated pursuant to the operating agreements of the LLCs and that Plaintiff was no longer authorized to act as a co-managing member of the LLCs. [*Id.* ¶ 18]. Knuckle and Robin sought and obtained stay relief to enforce the dissociation

provisions in the LLCs' operating agreements. [*Id.* ¶ 19-20]. Plaintiff appealed the order granting stay relief. [*Id.* ¶ 21].

A different LLC—Loudermilk/Rohrig 3084, LLC ("3084")—was organized and registered with the Georgia Secretary of State on October 27, 2004, by attorney R. Bailey Teague, Jr. ("Mr. Teague"). [*Id.* ¶ 23]. At that time, Charlie Loudermilk was identified as the registered agent and remained so through the administrative dissolution of the LLC in 2011. [Id ¶ 24-25]. Charlie and Plaintiff each owned a 50% interest in 3084. [*Id.* at 27]. Plaintiff alleges on information and belief that 3110, which is 100% owned by Charlie Loudermilk, substituted in for Charlie as a 50% member of 3084 before July 31, 2007. [*Id.* ¶ 28].

According to 3084's operating agreement, its purpose was to acquire property known as 3084-3130 Roswell Road, Atlanta, Georgia (the "Roswell Road Property"), and it did so. [*Id.* ¶ 26, 29]. The Roswell Road Property consisted of three tax parcels numbered 3126 Roswell Road, 3116 Roswell Road, and 3084 Roswell Road. [*Id.* ¶ 30]. A consolidation map dated February 1, 2006, depicts the Roswell Road Property both collectively and by tax parcel. [*Id.* ¶ 31-32, Ex. 1]. The Roswell Road Property contained the Roxy Theatre (now controlled by the Loudermilks), the 3116-3136 Roswell Road Property that was the subject of the Parking Rights Dispute, the 8 at 8 Properties that are the subject of this proceeding, and the retail stores south of the 8 at 8 Property (now owned by the Rohrigs). [*Id.* ¶ 33].

On January 15, 2005, 3084 entered into an agreement giving Novare Development, LLC ("Novare") an option to purchase the 3116 and 3126 Roswell Road parcels (collectively the "3116 Property") through January 15, 2007. [*Id.* ¶ 34]. The option agreement was extended twice, first through January 18, 2007 and then through January 19, 2007. [*Id.* ¶ 35-36]. The second amendment to the option agreement provided that 3084 would transfer an

8

undivided 50% interest in the 3116 Property to Plaintiff, and then 3084 and Plaintiff would transfer their respective 50% interests in the 3116 Property to Novare. [*Id.* ¶ 37]. The second amendment also provided that 3084 and Plaintiff would have an opportunity to participate in the ownership of an LLC that would own and operate the parking garage that Novare intended to build on the 3116 Property. [*Id.* ¶ 38].

On January 19, 2007, the following transactions occurred: Novare assigned its interest in the option agreement to 3116 Roswell Road, LLC (the "Roswell LLC"),[2] which was 100% owned by Novare. [*Id.* ¶ 39]. The Roswell LLC purchased the 3116 Property, and 3084 and Plaintiff each transferred their 50% interest in the 3116 Property to the Roswell LLC, leaving 3084 with the 3084 Roswell Road parcel. [*Id.* ¶ 40-43].

The 3084 Roswell Road parcel was thereafter split into three tracts. [*Id.* ¶ 47]. In connection with the split, 3084 ordered a boundary survey, which was dated September 17, 2004 and last revised on August 1, 2007 (the "2007 Survey"). [*Id.* ¶ 44-46, Ex. 2]. The 2007 Survey depicts the Roswell Road Property as a whole and depicts the 3084 Roswell Road parcel split into three tracts: (1) a tract containing the Roxy Theatre and all of the 8 at 8 Properties ("Tract 1"); (2) a tract containing the demised interior wall space of .00745 acres sitting between the buildings numbered 3098 and 3102 Roswell Road ("Tract 2"); and (3) a tract containing retail shops south of 8 at 8 ("Tract 3"). [*Id.* ¶ 47].

On July 31, 2007, 3084 transferred Tract 1 to Defendant 3110. [*Id.* ¶ 53, Ex. 3]. Plaintiff alleges on information and belief that Charlie Loudermilk is the manager and sole member of 3110. [*Id.* ¶ 52]. Also on July 31, 2007, 3084 transferred Tract 2 and Tract 3 to Plaintiff. [*Id.* ¶ 54, Ex. 4]. All the transfers were made by limited warranty deeds that incorporated the 2007 Survey. [*Id.* ¶ 55].

---

[2] This is a different entity than Defendant 3116-3136 Roswell Road, LLC.

In September 2007, Plaintiff, George Rohrig, and Gary Pollock ordered a boundary, topographic, and utility survey for the 3084 Roswell Road parcel and property to the south of that parcel (the "Valentino Survey"). [*Id.* ¶ 58, Ex. 5]. The Valentino Survey was plotted on November 19, 2007 and incorporates the 2007 Survey among other things. [*Id.* ¶ 59].

On March 31, 2008, the Roswell LLC sold the 3116 Property to 305-309 Pharr Road, LLC ("Pharr Road LLC"). [*Id.* ¶ 60]. Pharr Road LLC was organized by Mr. Teague on February 22, 2007, with Robin Loudermilk identified as its initial registered agent. [*Id.* ¶ 62]. In connection with the sale of the 3116 Property to Pharr Road LLC, Plaintiff agreed to execute a termination of the second amendment to the option agreement described above, which had provided Plaintiff an opportunity to participate in the ownership of an LLC that would own and operate the parking garage that Novare intended to build on the site. [*Id.* ¶ 63]. Plaintiff agreed to sign the termination agreement based on representations from Charlie Loudermilk that Plaintiff's rights under the second amendment would nevertheless be preserved. [*Id.* ¶ 64]. Contemporaneous with execution of the termination agreement, Charlie and George Rohrig executed a handwritten agreement providing that in exchange for Plaintiff signing the termination agreement, Charlie would honor any rights George currently had pursuant to the second amendment. [*Id.* ¶ 65-66]. Thus, by March 31, 2008, the Loudermilks owned the 3116 Property. [*Id.* ¶ 67].

On December 23, 2009, Pharr Road LLC changed its name to 3116-3136 Roswell Road, LLC, which is Defendant 3116 in this proceeding. [*Id.* ¶ 68]. 3116 represented to this Court on October 20, 2014 in support of its request for a temporary restraining order in the Parking Rights Dispute, that Plaintiff has never owned an interest in Pharr Road, LLC or in 3116. [*Id.* ¶ 69]. Defendant 3116 also represented to this Court that Charlie Loudermilk, Robin

Loudermilk, and Greg Howard ("Greg Howard" or "Mr. Howard") owned Pharr Road LLC and now own 3116, which owns the 3116 Property. [*Id.* at 70].

On August 12, 2014, 3116 agreed to sell the 3116 Property to Hanover R.S. Limited Partnership ("Hanover") for more than $10 million. [*Id.* ¶ 72]. Prior to the sale, Plaintiff filed an Affidavit Regarding Parking Rights in the Superior Court of Fulton County, Georgia, in which Plaintiff claimed parking rights in the 3116 Property by virtue of the second amendment to the option agreement, the termination agreement, and the handwritten agreement. [*Id.* ¶ 73-74]. Thereafter, 3116 commenced the Parking Rights AP against Plaintiff and George Rohrig to remove the parking rights affidavit from the public record. [*Id.* ¶ 75]

On October 22, 2014, the Rohrigs (including Rohrig Investments, George Rohrig, Matt Rohrig, Al Rohrig, John Frasier, Stephen DeWitt) and their attorneys from Stone & Baxter engaged in extensive negotiations with the Loudermilks (including Robin Loudermilk, Mr.Howard, Knuckle, and 3116) and their respective attorneys from Greenberg Traurig and McKenna Long. [*Id.* ¶ 76]. The purpose of the negotiations was to reach a consensual resolution of three related matters: (1) the dissociation issue; (2) the division of ownership of the LLCs' property; and (3) the Parking Rights Dispute. [*Id.* at 77]. Although the parties did not resolve the disputes at that time, the template for their eventual settlement arose, including the concepts of splitting the LLCs' properties between the two sides, assenting on the dissociation issue as a result of the property split, and conveyance of the 8 at 8 Properties from the Loudermilks to the Rohrigs to resolve the Parking Rights Dispute. [*Id.* at 78].

On October 23, 2014, on behalf of the Rohrigs, Ward Stone emailed a global settlement offer to Mike King for the Loudermilks that proposed with respect to the Parking Rights Dispute that "Rohrig gets the '8 at 8' space including land all the way to Early [S]treet

….” [*Id.* ¶ 79-80]. On October 25, 2014, on behalf of the Loudermilks, Mike King emailed a counter offer to Ward Stone for the Rohrigs setting out what each of the relevant Loudermilk parties (including 3110) was willing to do to reach a global settlement. [*Id.* ¶ 81]. With respect to the Parking Rights Dispute, the counter offer proposed that the "8 at 8 retail space" owned by 3110 "will be transferred to Rohrig as platted, without an extension to Early Street." [*Id.* ¶ 82]. Mike King also indicated that under the counter offer there "will be complete releases of the LLC members and their principals and related parties (including Robert C. Loudermilk, Sr., Robert C. Loudermilk, Jr., Knuckle, George Rohrig and Rohrig Investments)." [*Id.* ¶ 83]. Thereafter, Ward Stone responded with a further counter offer that provided that the "8 at 8 retail space will be transferred to Rohrig as platted, with [typo omitted] an extension to Early Street, adjustable as necessary as to not interfere with the existing Roxy encroachments." [*Id.* ¶ 84-85].

On October 28, 2014, the parties attended a hearing in the Parking Rights AP. [*Id.* at 86]. In lieu of an evidentiary hearing, the parties conducted a global settlement conference at the courthouse, with the following persons in attendance: For the Rohrigs: Plaintiff, George Rohrig, John Frasier, Matt Rohrig, Al Rohrig, Stephien Dewitt, and their attorneys Ward Stone and David Bury; for the Loudermilks: Robin Loudermilk, Greg Howard, Knuckle, 3116, their attorneys from Greenberg (Ernest Greer, Mike King, and Sean Gordon), and their attorney from McKenna Long (Gary Marsh). [*Id.* 87-88]. Discussions included the issue of how to resolve the Parking Rights Dispute to permit the sale of the 3116 Property to Hanover to proceed and to find a substitute for the parking rights that Plaintiff would have to relinquish for the sale to proceed. [*Id.* ¶ 89]. During the discussions, Robin Loudermilk and Greg Howard agreed that 3110 would convey the 8 at 8 Property to Plaintiff with an extension of the property line on the 8 at 8 Property to Early Street on the condition that the extension to Early Street would be

accompanied by cross-easements for the Loudermilks' use of the Roxy Theatre's loading dock and the area surrounding the loading dock. [*Id.* ¶ 91]. The parties in the settlement conference were aware that the agreed on extension would cover a portion of the loading dock. [*Id.* ¶ 92].

The litigation attorneys in attendance were without their real estate specialists and access to the plats, surveys, and the real estate record. [*Id.* ¶ 93]. As the settlement conference was being conducted on the Court's schedule, and the Court was awaiting announcements, the attorneys agreed that 3110 would convey the 8 at 8 Property with an extension to Early Street over the dock so long as extending the property line in that manner was "legally possible" after consulting such specialists and real estate documents. [*Id.*]. Having reached a global agreement in principle, the Loudermilks and their attorneys left 3110 an "out" for matters in the real estate record or arising by operation of real estate law over which 3110 had no control. [*Id.* ¶ 95].

The Rohrig Parties and the Loudermilk Parties announced the terms of the settlement to the Court on October 28, 2014 (the "Announced Settlement"). [*Id.* ¶ 96]. Mike King, on behalf of 3116, read the settlement terms to the Court on the understanding that other attorneys who participated in the settlement conference would supplement or clarify. [*Id.* ¶ 97]. Mr. King stated:

> Within three business days, the owner of a property on Roswell Road that houses the 8 at 8 store, that LLC is controlled by Robert C. Loudermilk, Senior, will deliver a deed to Rohrig Investments for the 8 at 8 property by limited warranty deed in fee subject to encumbrances of record.
> In addition, it is the intention of the parties that, to the extent it is legally possible to extend the property lines bordering the 8 at 8 property to Early Street … and subject to documentation and survey, as necessary ….
> To the extent that that is possible, a deed will be delivered giving that extension of property, subject to necessary cross-easements, as necessary, to also serve the Loudermilk-Knuckle and other Loudermilk properties.

13

[*Id.* at ¶ 98, quoting Hearing Tr. at p.3 li. 15-25, p.4 li. 8-11.] Mr. King further stated that "[t]he releases that are intended are intended to be very broad, and will include the principals and related parties, and it is here on my notes, the LLCs themselves, the members, their principals, related parties. And that includes also Greg Howard, who is a member of 3116." [*Id.* ¶ 99, quoting Hearing Tr. at p.8 li. 4-8.]

Mr. Marsh also stated on the record that

The only part of the settlement the parties would envision implementing immediately, really is a settlement of the adversary proceeding so the quit-claim deed for 3116 and the deed to the Debtor of the 8 at 8 space, that would happen prior to Court approval of the over all settlement. But that we would implement this week, is the understanding.

And then the reciprocal easement that Mr. King talked about relating to the 8 at 8 would help service the Buckhead Theater. That would be an easement of access for that property.

[*Id.* ¶ 100, quoting Hearing Tr. at p.11 li. 13-22.]

Following the October 28, 2014 hearing, the attorneys for the parties began documenting the Settlement Agreement. [*Id.* ¶ 101]. After exchanging at least 15 drafts, the Rohrig Parties and the Loudermilk Parties reduced the Announced Settlement to the Settlement Agreement. [*Id.* ¶ 102]. Plaintiff alleges on information and belief that the Loudermilk Parties executed the Settlement Agreement and delivered their signatures to the Rohrig Paries on November 8, 2014. [*Id.* ¶ 103]. The Rohrig Parties executed the Settlement Agreement, and delivered their signatures to the Loudermilk Parties on November 10, 2014. However, the Settlement Agreement and the parties' respective obligations under the Settlement Agreement were expressly subject to and dependent on Bankruptcy Court approval under Rule 9019. [*Id.* ¶ 105].

The Settlement Agreement incorporates the Announced Settlement by express reference. [*Id.* ¶ 106]. The Settlement Agreement required the following, each of which was to serve as an initial undertaking to effectuate the Settlement Agreement: (i) withdrawal of 3116's objection to confirmation of Plaintiff's Chapter 11 plan (which occurred prior to confirmation of the plan); (ii) dismissal of the Parking Rights AP without prejudice (which occurred on October 29, 2014); (iii) withdrawal of Robin Loudermilk's and Knuckle's proofs of claims and Plaintiff's objections to the claims (which occurred on December 4, 2014 and December 8, 2014, respectively); and (iv) dismissal of the stay relief appeal (which occurred on December 8, 2014). [*Id.* ¶ 107].

Section 3.0 of the Settlement Agreement provides:

Within three (3) business days of Authorization, the Loudermilk Parties will obtain from 3110 Roswell Road, LLC and deliver to Rohrig a Limited Warranty Deed granting title to Rohrig of property known as the 8 at 8 space subject to encumbrances of record. The 8 at 8 space (the "8 at 8 Property") is currently a part of property numbered in Fulton County, Georgia as 3110 Roswell Road. In consultation with Rohrig's surveyors and attorneys, and to the extent it is legally possible, the Loudermilk Parties will obtain from 3110 Roswell Road, LLC and convey to Rohrig by limited warranty deed an extension of the property lines for the 8 at 8 Property westward to Early Street subject to documentation and surveys, as necessary. Any extension of the property lines will include cross easements for the benefit of 3110 Roswell Road, LLC and the Loudermilk Parties. In addition, the Loudermilk Parties will obtain from 3110 Roswell Road and convey to Rohrig an easement for pedestrian traffic to the portion of the 3110 Roswell Road property commonly known as the "breezeway." The Rohrig Parties and the Loudermilk Parties will split the costs of documentation and surveys related to the conveyance of the 8 at 8 Property, and any extension or relocation of property lines, up to $10,000 on a 50-50 basis.

[*Id.* ¶ 110, quoting Settlement Agreement § 3.0]. Section 4.0 of the Settlement Agreement states that Plaintiff and George Rohrig have "already delivered to 3116 a Quitclaim Deed conveying

15

any rights they have in the 3116 Property, including a release of parking rights." [*Id.* ¶ 111, quoting Settlement Agreement § 4.0].

What the parties call the 8 at 8 Property is currently a part of property numbered in Fulton County, Georgia, as 3110 Roswell Road and owned by 3110. [*Id.* ¶ 109]. The agreement by the Loudermilk Parties to deed the 8 at 8 Property to Plaintiff and the agreement by the Rohrig Parties to quitclaim any interest in the parking spaces at the 3116 Property was a one-to-one deal in which both properties were viewed as being equally valuable to the receiving party. [*Id.* ¶ 108].

On November 13, 2014, Plaintiff filed its Motion for Authorization to Enter Into a Compromise and Settlement Agreement Pursuant to Rule 9019. [*Id.* ¶ 112]. On or before November 14, 2014, Plaintiff asked Valentino to update the Valentino Survey to reflect a conveyance from 3110 to Plaintiff of the 8 at 8 Property in the extended configuration contemplated in the Announced Settlement and the Settlement Agreement. [*Id.* ¶ 113]. On November 20, 2014, Valentino delivered the updated survey (the "Rohrig Survey") to Plaintiff by email along with a legal description of the property to be conveyed.  [*Id.* ¶ 115, 116]. In the email, Valentino stated that the property would have to be replatted to combine the 0.075 acres[3] with Plaintiff's property to the south. [*Id.* ¶ 117, Ex. 7]. Plaintiff alleges that this email demonstrates that Valentino viewed the Settlement Agreement as simply contemplating that the northern building line on the 8 at 8 Property would be extended to Early Street and that the line would replace the existing boundary line between Plaintiff's and 3110's properties. [*Id.* ¶ 118].

Plaintiff alleges on information and belief that during the week of December 1, 2014, Mr. Howard transmitted the Rohrig Survey to Mr. Teague for preparation of a limited

---

[3] This appears to be a reference to the .00745 acre tract containing the demised interior wall space. *Supra* p.9.

warranty deed transferring the 8 at 8 Properties as depicted on the Rohrig Survey from 3110 to Plaintiff. [*Id.* ¶ 121].

The Court heard the settlement motion on December 3, 2014 and entered an order approving the Settlement on December 4, 2014 at 10:45 am. [*Id.* ¶ 122-123]. The field study for the Rohrig Survey and the Rohrig Survey itself pre-dated this Court's approval of the Settlement Agreement. [*Id.* ¶ 124].

Later on December 4, 2014, at 1:38 pm, Mr. Teague emailed Mr. Howard a draft limited warranted deed (the "Draft Deed") that conformed to the Rohrig Survey and legal description. [*Id.* ¶ 125-127, Ex. 8]. The email stated that "The survey also needs to be addressed to 3110 Roswell Road, LLC." [*Id.* ¶ 125]. Mr. Teague also described the cross-easements over the loading dock and the breezeway easement[4] and 3110's remaining property following the transfer. [*Id.* ¶ 128-129]. Mr. Teague also reserved for 3110 a permanent, no-build easement, preventing Plaintiff from constructing additional buildings or vertical improvements on the property. [*Id.* ¶ 130].

Also on December 4, 2014, about two hours after receiving the Draft Deed from Mr. Teague, Mr. Howard forwarded Mr. Teague's email and Draft Deed to John Frasier, a principal of Plaintiff. [*Id.* ¶ 131]. In doing so Mr. Teague wrote that "we need Valentino to address the survey to 3110 Roswell Road, LLC. … I will not be able to provide an executed copy tomorrow, but can provide on Monday [December 8, 2014]." [*Id.* ¶ 132]. Plaintiff alleges on information and belief that Mr. Howard transmitted the Draft Deed to Mr. Frasier with express authority from 3110, and that Mr. Howard has express authority from 3110 to represent to Mr. Frasier that the Draft Deed would be executed by Monday, December 8, 2014. [*Id.* ¶ 133-34].

---

[4] Plaintiff states that this was done "presumably at 3110 Roswell Road, LLC's direction …." [Amended Complaint ¶ 128].

Because Mr. Howard approved the Rohrig Survey, instructed Mr. Teague to base the Draft Deed on the Rohrig Survey, and forwarded Mr. Teague's work product on behalf of 3110 to Plaintiff, all without objection, it appears the Rohrig Parties, the Loudermilk Parties, Valentino, Mr. Howard, Mr. Teague, and 3110 all interpreted the Settlement Agreement in the same way with respect to the identity of the 8 at 8 Property, the extension of the property line, the conveyance of a portion of the loading dock, and the meaning of "legally possible." [*Id.* ¶ 135].

On December 12, 2014, Bill Busby of Valentino sent a follow up email to Plaintiff, with documents necessary for replatting the property, including a replat survey. [*Id.* ¶ 137-140, Ex. 9]. The email stated that the 3110 owners would have to sign one of the documents. [*Id.* ¶ 137]. The replat survey is addressed to "3110 Roswell Road, LLC and Rohrig Investments, LP." [*Id.* ¶ 141].

Plaintiff rejected the Draft Deed because the Settlement Agreement did not mention a no-build easement in favor of 3110. [*Id.* ¶ 142, 144]. On January 15, 2015, Mr. Howard emailed Mr. Frasier, stating that he had discussed the transfer with Charlie Loudermilk, and Charlie was "not willing to touch the area of the property that includes the loading dock." [*Id.* ¶ 146, Ex. 10]. Mr. Howard requested an updated survey and legal description that he could provide to Mr. Teague for use in drafting a limited warranty deed. [*Id.* ¶ 146]. Attached to the email was a copy of the Rohrig Survey with a shaded area showing the portion of the property 3110 was willing to transfer to Plaintiff. [*Id.* ¶ 147]. On February 16, 2015, Mr. Howard forwarded the January 15, 2015 email and the shaded Rohrig Survey to Valentino, requesting a survey and legal description consistent with the shaded area. [*Id.* ¶ 148]. Valentino forwarded the request to Plaintiff. [*Id.* ¶ 149].

18

On March 17, 2015, the Loudermilk Parties, through attorney Mike King, sent a letter to counsel for the Rohrig Parties, with a limited warranty deed executed by Charlie Loudermilk on behalf of 3110. [*Id.* ¶ 150, 151, 153, Ex. 11]. The letter stated that "while the property line extends beyond the 8@8 office space in the direction of Early Street, it has not been legally possible to extend the property lines all the way to Early Street." [*Id.* ¶ 152]. Also attached to the letter was an exhibit plat dated February 26, 2015, prepared by Valentino for 3110 that referenced the same job and file number from the Valentino Survey and the Rohrig Survey. [*Id.* ¶ 154-155]. These documents have 3110 conveying only the aforementioned shaded area on the Rohrig Survey. [*Id.* ¶ 155].

The Rohrig Parties have repeatedly demanded that Defendants provide Plaintiff a limited warranty deed that conforms to the Rohrig Survey. [*Id.* ¶ 156]. As of the date of the Amended Complaint, Defendants have not delivered such deed to Plaintiff. [*Id.* ¶ 158]. Plaintiffs allege on information and belief that it is legally possible for Defendants to comply with all the requirements set forth in Section 3.0 of the Settlement Agreement. [*Id.* ¶ 159].

Plaintiff makes additional allegations to support a claim based on agency as follows: Charlie Loudermilk at one time had a direct ownership interest in each of the LLCs as that term is defined in the Settlement Agreement. [*Id.* ¶ 161a]. Charlie Loudermilk maintains an indirect ownership interest in the LLCs by having transferred his direct ownership interests in the LLCs to Knuckle in 2010. [*Id.* ¶ 161b]. Charlie Loudermilk at one time had a direct ownership interest in Loudermilk/Rohrig 3084, LLC. [*Id.* ¶ 161c]. Plaintiff alleges on information and belief that Charlie Loudermilk transferred his interest in 3084 to 3110, maintaining an indirect ownership therein. [*Id.* ¶ 161d].

19

3084 was the entity that owned the entire Roswell Road Property, sold the 3116 Property to Novare, and conveyed the remainder of the property to Plaintiff and 3110. [*Id.* ¶ 161e]. Charlie Loudermilk, Robin Loudermilk, and Greg Howard are the sole direct owners of 3116. [*Id.* ¶ 161f]. 3116 purchased the 3116 Property from Novare and then agreed to sell it to Hanover, which sale was halted by the Parking Rights Dispute. [*Id.* ¶ 161g].

As an owner of 3116, Charlie Loudermilk had a financial incentive to see the Parking Rights Dispute resolved as part of the Settlement Agreement as he was a direct personal beneficiary of such resolution. [*Id.* ¶ 161h]. In addition, as an indirect owner of the LLCs through Knuckle and having made significant capitalization loans to at least two of the LLCs, Charlie Loudermilk had a financial incentive to see that the dissociation issue and related property split were resolved under the Settlement Agreement. [*Id.* ¶ 161i]. Charlie Loudermilk received a release under the Settlement Agreement. [*Id.* ¶ 161j].

In term sheets leading up to the settlement conference on October 28, 2014, Mr. King made representations to Plaintiff about terms and conditions that the LLCs, Robin Loudermilk, Knuckle, 3116, and 3110 were willing to comply with to reach a global settlement of the disputes. [*Id.* ¶ 161k]. In the settlement conference, Robin Loudermilk and Greg Howard made representations to the Rohrigs that 3110 would convey the 8 at 8 Property as contemplated in the Settlement Agreement. [*Id.* ¶ 161*l*]. In the Announced Settlement, Mr. King described the 8 at 8 Property conveyance in a manner suggesting that 3110, having agreed to make the conveyance, would in fact make the conveyance. [*Id.* ¶ 161m]. Also in the Announced Settlement, Mr. King emphasized the breadth of the releases, including as to Charlie Loudermilk and his affiliates. [*Id.* ¶ 161n]. In the Announced Settlement, Mr. Marsh stressed the necessity of the cross-easements for the benefit of 3110 and other Loudermilks. [*Id.* ¶ 161o].

In efforts to document the Settlement Agreement, Mr. King represented to counsel for the Rohrigs on November 7, 2014 that "we will agree to give Rohrig an easement to the breezeway," a comment which suggests Mr. King is speaking with authority on behalf of 3110, as 3110 was the owner of the Breezeway. [*Id.* ¶ 161p].

All the correspondence starting the week of December 1, 2014 through February 16, 2015 among Mr. Howard, Mr. Teague, Valentino, and Mr. Frasier involved Mr. Howard speaking and making representations and requests on behalf of 3110 and Charlie Loudermilk [*Id.* ¶ 161q]. Mr. Howard is 3110's registered agent. [*Id.* ¶ 161r]. In addition, at a March 13, 2014 hearing on Robin Loudermilk and Knuckle's motion for stay relief, Mr. Howard testified under oath about his managerial role in Charlie Loudermilk's, Robin Loudermilk's, The Loudermilk Companies', and their affiliates' corporate governance and financial and business affairs. [*Id.* ¶ 163]. At that hearing, Mr. Howard testified that as of May 2014, he had been CFO of The Loudermilk Companies, LLC—the management entity for all of the Loudermilk family investments, LLCs, joint ventures, and wholly owned investments—for 10 years. [*Id.* ¶ 164a, b]. He further testified that he manages the personal finances for Charlie and Robin Loudermilk, and he works on their family trusts and estate matters and manages the family office, which is concentrated in commercial real estate. [*Id.* ¶ 164c, d]. Mr. Howard testified that he manages all the Loudermilk's real estate and and is involved in all financial reporting and accounting. [*Id.* ¶ 164e, f]. Based on the foregoing, Plaintiff alleges Mr. Howard is an expressly authorized agent for Charlie Loudermilk, Robin Loudermilk, and their entire portfolio of personal and business interests. [*Id.* ¶ 165]. Plaintiff further alleges that based on information on the website for The Loudermilk Companies, it holds itself out to the public as a representative and contact for all the Loudermilk properties at the heart of the Parking Rights Dispute. [*Id.* ¶ 170].

21

Mr. Teague has performed substantially all the real estate work for every transaction described in the Amended Complaint. [*Id.* ¶ 161s]. Plaintiff alleges on information and belief that every action taken by Mr. Teague on behalf of the various Loudermilk and Rohrig parties since 2006 was taken with express, written authority, including the work he performed on December 4, 2014 to effectuate the 3110 conveyance under the Settlement Agreement. [*Id.* ¶ 161t].

When Plaintiff filed a motion to reopen its bankruptcy case to enforce the Settlement Agreement, on December 18, 2015, Mr. Marsh and Mr. Gordon filed a notice of appearance on behalf of 3110. [*Id.* ¶ 171a]. Prior to that date, the attorneys had appeared for Robin Loudermilk and Knuckle only. [*Id.* ¶ 171b]. Plaintiff alleges on information and belief that Mr. Marsh and Mr. Gordon did not file the notice of appearance without express written authority from 3110. [*Id.* ¶ 171c]. The attorneys withdrew the notice of appearance for 3110 on January 6, 2016, a few minutes after George Geeslin filed a notice of appearance for 3110. [*Id.* ¶ 171d]. In objecting to Plaintiff's motion to reopen, the Loudermilk Parties and 3110 filed objections minutes apart, raising the same objections. [*Id.* ¶ 171e]. Each of the objections, despite having been filed by three separate law firms, contained the same citation error. [*Id.* ¶ 171f]. Plaintiff alleges that based on the foregoing and despite having separate counsel, Charlie Loudermilk, Robin Loudermilk, and all their entities have participated in these proceedings as a joint enterprise. [*Id.* ¶ 172].

## V. Legal Analysis

### A. Contract Claims

Plaintiff seeks specific performance against all Defendants (Count 1), damages for breach of contract against all Defendants (Count 2), or damages for breach of contract against

the Loudermilk Parties (Count 3). The Settlement Agreement is governed by Georgia Law. [Settlement Agreement § 16.0]. To state a claim for breach of contract, Plaintiff must allege a material breach of the terms of a valid contract and resultant damages to a party with the right to complain about a breach. *Roberts v. JP Morgan Chase Bank, N.A.*, 342 Ga. App. 73, 76, 802 S.E.2d 880, 884 (2017); *Bryant v. Progressive Mountain Ins. Co.*, 243 F. Supp.3d 1333, 1340 (M.D. Ga. 2017).

### 1. Contract Claims Against 3110

Here, Plaintiff contends Defendants breached the Settlement Agreement by their failure to convey the entirety of the Disputed Property. However, only those who are parties to a contract are bound by its terms. *Martin v. Pierce*, 140 Ga. App. 897, 899, 232 S.E.2d 170, 172 (1977); *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 437, 629 S.E.2d 22, 25 (2006). The Settlement Agreement provides that it is "made and entered into as of the 28th day of October, 2014 by and among Rohrig Investments, LP …, George W. Rohrig, Jr. … and The Knuckle Partnership, LLLP …, 3116-3136 Roswell Road, LLC … and Robert C. Loudermilk, Jr." [Settlement Agreement at 1]. The Settlement Agreement was executed by (1) George Rohrig on behalf of Plaintiff as its sole general partner; (2) George Rohrig, individually; (3) Robin Loudermilk on behalf of Knuckle as manager of The Knuckle Company, LLC which in turn is general partner of Knuckle; (4) Robin Loudermilk, individually; and (5) Robin Loudermilk on behalf of 3116 as its manager. [*Id.* at 16-17]. While the Loudermilk Parties are named parties to the Agreement and are signatories to the Agreement, 3110—the owner of the Disputed Property—is neither a named party nor a signatory,[5] and it has no express obligations under the

---

[5] Plaintiff argues that the Settlement Agreement contains patent ambiguities as to the capacities in which the Loudermilk Parties executed the Agreement. For the reasons discussed *infra*, the Court rejects this argument.

Settlement Agreement.[6] Thus, Plaintiff's contract claims against Defendant 3110 rely on the existence of an agency relationship between 3110 and the Loudermilk Parties.

In the Dismissal Order, the Court found Plaintiff failed to sufficiently allege an agency relationship because it offered nothing more than conclusory statements as to agency.[7] In the Amended Complaint, Plaintiff has added a substantial number of allegations that it contends allow its claims to survive a motion to dismiss to the extent they depend on agency. These allegations primarily concern the actions and statements of Greg Howard, Bailey Teague, and counsel for the Loudermilk Parties. Specifically, Plaintiff alleges that Robin Loudermilk, Mr. Howard, 3116-3136 Roswell Road, LLC, The Loudermilk Companies, and all of the attorneys who appeared in or made representations through these proceedings had express authority to and actually did bind 3110 and Charlie Loudermilk to the Settlement Agreement. The Amended Complaint further alleges on information and belief that Charlie Loudermilk is the sole owner of 3110, but contains no allegations of any statements or actions of Charlie Loudermilk in furtherance of the negotiations leading to the Settlement Agreement.

### a. Georgia Law of Agency

Under Georgia law, agency may arise in three ways: expressly, by implication, or through ratification. O.C.G.A. § 10-6-1. To be binding on the principal, the acts of the agent must be within the scope of the agent's authority. *Anaya v. Coello*, 279 Ga. App. 578, 580, 632 S.E.2d 425, 427 (2006). Under the equal dignity rule, when the performance of the agency requires a writing under the statute of frauds, the agent's authority must also be in writing. O.C.G.A. § 10-6-2; *Dunn v. Venture Bldg. Group, Inc.*, 283 Ga. App. 500, 502-03, 642 S.E.2d

---

[6] The Settlement Agreement states the Loudermilk Parties "will obtain … and deliver" the 8 at 8 Property and "will obtain … and convey" an extension of property lines and will "obtain … and convey" the Breezeway easement. [Settlement Agreement § 3.0].
[7] A bare assertion of an agency relationship will not survive a motion to dismiss. *See Estate of Jackson, et al. v. Schron (In re Fundamental Long Term Care, Inc.)*, 873 F.3d 1325, 1342 (11th Cir. 2017).

156, 159 (2007) (citing *Turnipseed v. Jaje*, 267 Ga. 320, 322, 477 S.E.2d 101, 103 (1996);

O.C.G.A. § 13-5-30(4)). "[P]roof of agency can be shown … by circumstantial evidence,

apparent relations, and conduct of the parties." *Stewart v. Georgia Mut. Ins. Co.*, 159 Ga. App.

91, 92, 282 S.E.2d 728, 729 (1981).

### i. Types of Authority

Actual or express authority arises when the principal has specifically granted the

agent power to bind the principal. *J'Carpc, LLC v. Wilkins*, 545 F. Supp.2d 1330, 1337 (N.D.

Ga. 2008). In order to demonstrate express actual authority, Plaintiff must plead facts regarding a

verbal or written agreement between 3110 and the Loudermilk Parties. *Trusted Data Solutions,*

*LLC v Kotchen & Low, LLP,* No. 14-cv-1719, 2015 U.S. Dist. LEXIS 180380 at *10 (N.D. Ga.

Feb. 5, 2015) (citing  *J'Carpc*, 545 F. Supp.2d at 1337).  Implied agency arises "due to the

apparent authority of an agent, even if the agent has no actual authority, but only due to the

conduct of the *principal* vis-à-vis the third-party." 545 F. Supp.2d at 1337 (emphasis in original)

(citing *Hinely v. Barrow*, 169 Ga. App. 529, 530, 313 S.E.2d 739, 741 (1984)). "[A]pparent

authority is not predicated on whatever a third party chooses to think an agent has the right to do

… but must be based on acts of the principal which have led the third party to believe reasonably

the agent had such authority." *Dunn*, 283 Ga. App. at 503, 642 S.E.2d at 159 (citations omitted).

Thus, a principal is estopped from denying the authority when it

> places a purported agent in a position of apparent authority *so that*
> *a person of ordinary prudence conversant with business usages*
> *and the nature of the particular business is justified in assuming*
> *that such agent has the authority to perform a particular act* and
> deals with the agent upon that assumption.

*Addley v. Beizer*, 205 Ga. App. 714, 717-18, 423 S.E.2d 398, 402 (1992) (emphasis in original)

(quotation marks and citations omitted). Agents with apparent authority cannot satisfy the statute

of frauds requirement for written authority; however, that obstacle may be overcome by ratification or estoppel. *Union Camp Corp. v. Dyal*, 460 F.2d 678, 688 (5th Cir. 1972).

Generally, an agent's title or office, by itself, will not establish apparent authority to bind a corporation. *ABV Electronics, Inc. v. Ceton Corp*., No. 1:12-cv-2178-ODE, 2014 WL 12573015, at *8 n.20 (N.D. Ga. March 25, 2014) (citing *Bresnahan v. Lighthouse Mission, Inc.*, 230 Ga. App. 389, 391, 496 S.E.2d 351, 354 (1998)). And, "[t]he mere fact that an employee may be delegated by the employer to look after certain accounts is insufficient to show such authority …." Georgia Contracts: Law and Litigation § 2:3 Contracts by agents—Authority (2d ed.) (citing *Atlanta Market Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 606, 503 S.E.2d 278, 281 (1998)). Instead the purported agent must be "'vested with authority, real or ostensible, to create obligations on behalf of [the principal], bringing third parties into contractual relations with [the principal].'" *Atlanta Market Ctr. Mgmt.*, 269 Ga. at 606, 503 S.E.2d at 281 (quoting *Southeastern Fidelity Ins. Co. v. Heard*, 123 Ga. App. 635, 639, 182 S.E.2d 153, 156 (1971) (distinguishing between a servant-master relationship and an agency relationship), *overruled on other grounds* by *Ogden Equip. Co. v. Talmadge Farms, Inc*., 132 Ga. App. 834, 209 S.E.2d 260 (1974); *see also Physician Specialists in Anesthesia, P.C. v. Wildmon*, 238 Ga. App. 730, 732, 521 S.E.2d 358, 360 (1999) ("employer-employee relationship does not typically create a principal-agent relationship"). However, the course of dealings between the agent and principal may show apparent authority. For example, when the principal has a history of ratifying certain acts of the alleged agent, then the agent's authority to carry out similar acts is implied in the absence of anything to the contrary. *Rothberg v. Manhattan Coil Co.*, 84 Ga. App. 528, 535, 66 S.E.2d 390, 395 (1951). "But authority to do an act as agent will not be implied from the doing of totally distinct and different act on behalf of the principal. … Agency by implication rests

26

merely upon rational inference and the authority to be implied from acquiescence in acts usual and ordinary in the course of business wi[ll] not include other acts of a collateral or dissimilar character." *Id.*

In addition, authority to act may be established by the acts of the alleged agent in special circumstances. However, "[t]he only 'special circumstances' found by Georgia courts are the inherent powers of attorneys to utilize on behalf of their clients." *Lugue v. Hercules, Inc.*, 12 F. Supp.2d 1351, 1361 n. 10 (S.D. Ga. 1997) (citing *Addley*, 205 Ga. App. at 718, 423 S.E.2d at 403). From one party's view, the opponent's attorney has apparent plenary authority. *Addley*, 205 Ga. App. at 717, 423 S.E.2d at 401. But the apparent authority only arises as to an attorney of record, such that the attorney "is actually authorized to represent the client in the cause or proceeding in which the third party seeks to bind him." *Id.* Furthermore, the rule of apparent authority for attorneys of record "is a significant departure from the actual agency rule of 'apparent authority.'" *Id.* at 717, 423 S.E.2d at 402.

### ii. Ratification

In the absence of authorization through express or implied agency, the principal may ratify the acts of the agent. "A ratification may be express or implied from the acts or silence of the principal." O.C.G.A. § 10-6-52. However, a contract for the sale of real estate must be ratified in writing, unless an exception takes it out of the statute of frauds. *Turnipseed*, 267 Ga. at 324, 477 S.E.2d at 104. If the principal has received the benefits of a contract and does not want to ratify it, "he must act promptly and affirmatively to disavow it." *Hutchens v. State*, 174 Ga. App. 507, 508, 330 S.E.2d 436, 437 (1985) (citing *Southern Motors of Savannah, Inc. v. Krieger*, 86 Ga. App. 574, 576, 71 S.E.2d 884, 886 (1952)). If the principal has knowledge of the agent's act and fails to object for an unreasonable time, the contract is ratified by operation of

law. *A&S Group, Inc. v. Murray*, 291 Ga. App. 331, 334, 661 S.E.2d 701, 704 (2008) (quoting *Klingbeil v. Renbaum*, 146 Ga. App. 591, 593, 246 S.E.2d 698, 700 (1978)). "A ratification once made may not be revoked." O.C.G.A. § 10-6-52. Ratification is effective only if the principal knows of the agent's unauthorized act and, "with full knowledge of all the material facts, accept[s] and retain[s] the benefits of the unauthorized act." *Agilysys, Inc. v. Hall*, 258 F. Supp.3d 1331, 1347 (N.D. Ga. 2017) (quoting *J'Carpc*, 545 F. Supp.2d at 1337) (finding failure to state a claim based on agency because the plaintiff did not assert facts to show the principal had full knowledge of all material facts related to the transaction). There can be no partial ratification; the principal must ratify in full or not at all. *See* O.C.G.A. § 10-6-51.[8] "Whether ratification occurs is usually a fact question for the jury." *Brock v. Yale Mortg. Corp.*, 287 Ga. 849, 854, 700 S.E.2d 583, 588 (2010).

### b. Plaintiff's Contentions

Plaintiff contends that Robin Loudermilk, Greg Howard, 3116, The Loudermilk Companies, and all of their attorneys had actual or apparent authority to bind 3110 and Charlie Loudermilk to the terms of the Agreement. Plaintiff further contends that 3110 ratified the Settlement Agreement through the actions of Mr. Howard and Mr. Teague in providing to Plaintiff the unsigned Draft Deed that conveyed the 8 at 8 Property, the Breezeway easement, and all the Disputed Property, albeit subject to a no-build easement, along with Mr. Howard's statement that he could provide an executed copy by the following Monday. Plaintiff further contends 3110 ratified the Settlement Agreement by providing an executed deed in March 2015 conveying the 8 at 8 Property and a portion of the Disputed Property. Even though the executed

---

[8] A principal may ratify an agreement by accepting the benefits thereunder and making partial payments on the agreement. *McDaniel v. Hensons', Inc.*, 229 Ga. App. 213, 215, 493 S.E.2d 529, 531 (1997); *see also Thomas Register of Am. Mfrs., Inc. v. Proto Systems Elec. Pkg., Inc.*, 221 Ga. App. 779, 780, 471 S.E.2d 235, 237 (1996) (same).

deed did not convey all the property sought by Plaintiff, Plaintiff contends 3110 acknowledged and acted in accordance with 3110's interpretation of the Agreement; thus it performed like one who believes it has obligations under the Agreement.

### c. Analysis

#### i. Express and Apparent Authority

With respect to express authority, Plaintiff contends that its allegations "suggest that discovery will reveal internal correspondence and agreements among [the Loudermilk family members, companies, and affiliates] that delegate express authority for one Loudermilk constituent to negotiate for and bind others[.]" [Doc. 27 ¶ 161]. Plaintiff also points to the notice of appearance filed by Mr. Marsh and Mr. Gordon on behalf of 3110 on December 8, 2015 which was withdrawn January 5, 2016 after George Geeslin filed a notice of appearance for 3110. Plaintiff also points out that the objections filed by three separate law firms representing the Loudermilk Parties and 3110 contained a common error in a case citation.

While the Amended Complaint includes several allegations that Plaintiff believed counsel for Defendants, or Mr. Teague or Mr. Howard were expressly authorized to represent 3110 and these parties represented what 3110 was willing to do, wholly absent  from the Amended Complaint is any allegation that any of the Loudermilk Parties or their attorneys represented to Plaintiff that they were authorized to act on behalf of 3110 and were in fact acting on behalf of 3110 for purposes of the settlement negotiations.  Also, missing is any allegation of facts that a written agreement exists, who is a party to the agreement, and what activities are authorized.  Plaintiff has done no more than allege its belief that something must exist because Defendants are related entities and made representations that 3110 would do certain things. The interconnectedness of the various Loudermilk entities is not by itself enough to give rise to a

reasonable inference that discovery will lead to written documentation of actual agency, especially when 3110 was not made a party to the Settlement Agreement and no one signed the Agreement as a representative of 3110. Further, the notice of appearance filed by Mr. Marsh and Mr. Gordon and the similar briefs filed by Defendants in response to Plaintiff's motion to reopen the main bankruptcy case were filed on December 8, 2015 and January 6, 2016, respectively. This was more than a year after the Settlement Agreement was approved on December 4, 2014, and does not sufficiently allege express agency during the time of the settlement negotiations.

   With respect to apparent authority, Plaintiff has alleged Charlie Loudermilk is the manager and sole owner of 3110. Plaintiff's allegations are devoid of any actions, statements, or other manifestations by Charlie Loudermilk indicating that any of the Loudermilk Parties, their employees, or their attorneys were authorized to act on behalf of 3110 in negotiating the Settlement Agreement.[9] Plaintiff argues that it makes no sense to look for manifestations of apparent authority from the principal, 3110, because 3110 is an LLC and can only act through agents. However, O.C.G.A. § 14-11-301 sets forth the authority of members and managers to act on behalf of an LLC and to bind the LLC, depending on whether the LLC is member-managed or manager-managed. Plaintiff does not allege any facts from which the Court can reasonably conclude that anyone other than Charlie Loudermilk has the power to authorize others to act on behalf of 3110. Further, Plaintiff has not alleged any course of dealings or special circumstances from which the Court could reasonably infer that any other Loudermilk entity or employees were acting with apparent authority. Although Plaintiff has alleged that Mr. Howard has extensive management control over The Loudermilk Companies, Plaintiff has not alleged that Mr. Howard or any of the Loudermilk Parties has any history of negotiating the settlement of disputes among

---

[9] The first indication of Charlie Loudermilk's involvement is the January 21, 2015 email from Greg Howard to John Frasier, in which Mr. Howard wrote: "I met with Charlie yesterday afternoon and discussed the transfer of the 8 at 8 space. … Charlie is not willing to touch the area of the property that includes the loading dock." [Doc. 29, Ex. 10].

related third parties on behalf of 3110, nor has Plaintiff alleged that any attorney involved in the

settlement negotiations was an attorney of record for 3110 at the time of the negotiations.

### ii. Contracts With Agent

Even if Plaintiff has alleged sufficient facts to state a claim that Defendants or any

Defendant acted as 3110's agent in negotiating the Settlement Agreement, Plaintiff has not stated

a claim against 3110 because Plaintiff contracted with the agent, as demonstrated by the fact that

3110 was not a named party to the contract and no one signed the contract as representative of

3110. Contracting with the agent does not in itself establish a contract with the principal. *Harris*

*v. Southeastern Printers Supply Co.*, 59 Ga. App. 729, 730, 2 S.E.2d 184, 185 (1939)). Because

Plaintiff chose to contract with the agent and not the principal, Plaintiff cannot seek relief against

the principal. *Fountainhead Dev. Corp., Inc. v. Dailey*, 263 Ga. App. 677, 679-80, 588 S.E.2d

768, 771-72 (2003); *Kingsberry Homes v. Findley*, 242 Ga. 362, 365, 249 S.E.2d 51, 53 (1978).

Plaintiff's contention that the interconnectedness of all the Loudermilk constituencies is such that

it is within the power of any of them to convey the Disputed Property is equally without merit as

it disregards the fact that the individuals and LLCs are all separate legal entities. *See Georgia*

*Dermatologic Surgery Centers, P.C. v. Pharis*, 339 Ga. App. 764, 771, 792 S.E.2d 747, 753

(2016). Furthermore, Plaintiff has provided no authority for the proposition that the relatedness

of various entitles and individuals gives rise to apparent authority between any two of them.[10]

*See, i.e., EnduraCare Therapy Mgmt., Inc. v. Drake*, 298 Ga. App. 809, 812, 681 S.E.2d 168,

171 (2009) (parent/subsidiary relationship does not in itself create apparent authority).

### iii. Ratification

With respect to ratification, Plaintiff contends 3110 received and accepted

benefits under the Settlement Agreement, including a release of all Plaintiff's claims against

---

[10] Plaintiff has made no alter ego claims.

Charlie Loudermilk and 3110.[11] Plaintiff further contends that any argument 3110's performance

was gratuitous is absurd given the contentious circumstances between the parties.[12] But even if

3110 did receive some benefit under the Agreement, its alleged actions did not manifest an intent

to ratify the Agreement, as it never proffered a deed consistent with the Agreement (as Plaintiff

interprets it). Assuming Mr. Howard had the authority to ratify the acts of purported agents on

behalf of 3110, he provided an unexecuted Draft Deed for all the 8 at 8 Properties, subject to a

no-build easement. Thus, the Draft Deed did not effect a ratification because it added restrictions

not present in the Settlement Agreement and it was not signed. The subsequent executed

warranty deed tendered by counsel for the Loudermilk Parties also did not effect a ratification

because it did not include the Breezeway easement and it did not include the entirety of the

Disputed Property.

Even if the Court were able to conclude that 3110's actions constituted ratification

for purposes of a motion to dismiss, 3110 is not obligated to do anything under the Agreement.

The only obligations with respect to conveyance of the property are those of the Loudermilk

Parties. As noted above 3110 is not a named party or a signatory to the contract. Section 3.0 of

the Settlement Agreement requires the Loudermilk Parties to "obtain" and to "deliver" or

"convey" the relevant deed. It does not require 3110 to do anything; thus there are no actions of

an agent to be ratified.

---

[11] This could be viewed as conflicting with Plaintiff's allegation elsewhere in the Amended Complaint that the transfer of property in Section 3.0 of the Settlement Agreement was intended to be a one-for-one exchange for the release of Plaintiff's parking rights affidavit. [Doc. 27 ¶ 108].
[12] This argument disregards the possibility that Charlie Loudermilk's performance on behalf of 3110 may have been motivated to aid the Loudermilk Parties in fulfilling their contractual obligations rather than to gratuitously benefit Plaintiff.

### iv. Parties to the Agreement

Plaintiff argues that the signature blocks in the Agreement are patently ambiguous as to what capacity the Loudermilk Parties executed the Agreement, and that the Loudermilk Parties executed on their own behalf and on behalf of 3110. Plaintiff contends the ambiguity arises from the fact that the Agreement contemplates various obligations on the part of parties who are related to the signatories but did not execute the Agreement. For example, the LLCs that owned the 9 properties divided in Section 1 of the Agreement did not sign despite the fact that they had obligations under the Agreement. Plaintiff further argues that the Agreement's merger clause does not exclude parol evidence regarding the signature blocks because the Agreement incorporates and makes a part of its terms the Announced Settlement, such that the merger clause protects the Announced Settlement, and the merger clause is subject to exceptions by which parol evidence may be used to establish the meaning of ambiguous terms in the writing. See 11 Williston on Contracts § 33:26 n.8 (4th ed.) (citing *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223 (3d Cir. 2001)).

The Court disagrees with Plaintiff's arguments regarding the merger clause and incorporation by reference of the Announced Settlement. The Settlement Agreement provides: "This Agreement constitutes the entire agreement and understanding between the Parties hereto and replaces, cancels, and supersedes any and all prior agreements and understandings between them pertaining to the subject matter hereof. There is no separate agreement, representation or other inducement for the execution of this Agreement." [Settlement Agreement § 15.0]. The Court located three references to the Announced Settlement in the Settlement Agreement. (1) "The Parties previously announced the terms of their settlement in open court on October 28, 2014 (the 'Announced Settlement')." [*Id.* ¶ Y]. (2) "As required by the Announced Settlement,

33

Rohrig and George Rohrig have already delivered to 3116 a Quitclaim Deed conveying any rights they have in the 3116 Property, including a release of parking rights." [*Id.* § 4.0]. (3) "As required by the Announced Settlement, 3116 has already dismissed the Adversary Action without prejudice and the Loudermilk Parties have withdrawn their objections to confirmation of Rohrig's bankruptcy plan." [*Id.* § 13.0]. These provisions mention the Announced Settlement but do not make it "reasonably clear that all provisions" of the Announced Settlement are incorporated by reference and binding on the parties. *Wilson v. Clark Atlanta Univ., Inc.*, 339 Ga. App. 814, 826, 794 S.E.2d 422, 432 (2016).

A contract may "incorporate by reference … other documents by specific reference and identification …." *Bowman v. Walnut Mtn. Prop. Owners Ass'n, Inc.*, 251 Ga. App. 91, 95, 553 S.E.2d 389, 393 (2001); s*ee also Northrop Grumman Info. Tech., Inc. v. U.S.*, 535 F.3d 1339, 1345 (Fed. Cir. 2008) (the contract incorporating extrinsic material "must clearly communicate that the purpose of the reference is to incorporate the reference material into the contract (rather than merely to acknowledge that the reference material is relevant to the contract, e.g., as background law or negotiating history.)"). For the incorporation to be effective the referenced documents or provisions must have a "'reasonably clear and ascertainable meaning.'" *Bowman*, 251 Ga. App. at 393, 553 S.E.2d at 95 (quoting *Goldman v. Vinson*, 244 Ga. App. 815, 817, 535 S.E.2d 305, 307 (2000)). Even assuming an oral announcement is subject to incorporation by reference, the Settlement Agreement contains no language specifically incorporating any or all terms of the Announced Settlement, nor is there any language from which such an inference can be made.

The Court also disagrees with Plaintiff regarding the ambiguity of the signature blocks. The signature blocks identify the person signing, the entity for which he is signing, and

his title with respect to that entity. Both George Rohrig and Robin Loudermilk signed the Agreement in representative capacities for Plaintiff and the Loudermilk Parties respectively and both also signed the Agreement, separately, in their individual capacities. This indicates both parties knew how to demonstrate agency when executing the Agreement. The fact that Robin Loudermilk did not expressly execute the Agreement on behalf of 3110, the fact that 3110 was not a named party to the Agreement, and the fact that 3110 has no obligations under the Agreement all lead to the inference that 3110 was not a participant intended to be bound by the Agreement.[13]

Further, the fact that no one signed the Agreement on behalf of the LLCs whose property was divided does not create an ambiguity. The Agreement states that the LLCs are controlled by the named parties to the contract.[14] By contrast, nothing in the Agreement states that 3110 is controlled by a named party to the contract. To the contrary, the Amended Complaint alleges that 3110 is controlled by Charlie Loudermilk, who is not a named party to the Agreement. Moreover, the Agreement places no obligations on the LLCs; all the actions necessary to carry out the division of the LLCs' property are required of the Parties.[15] [Settlement Agreement § 1].

Because Plaintiff has failed to allege facts to demonstrate that 3110 is a party to the Agreement, either directly or through an agent, or to demonstrate that 3110 has any

---

[13] Plaintiff's contention that parol evidence is admissible to bind an undisclosed principal to the Agreement may be true as far as it goes. *See* 12 Williston on Contracts § 35:54 (4th ed.). However, Plaintiff has not alleged 3110 was an undisclosed principal and that it was unaware the Loudermilk Parties were acting as an agent for 3110; rather, Plaintiff has argued just the opposite.

[14] The Agreement states: "At the time Rohrig commenced the Bankruptcy Case, Rohrig and Loudermilk were co-managing members of the LLCs." [Settlement Agreement, ¶ C at 6.]. The Agreement further states that Plaintiff, Knuckle, and Loudermilk were litigating enforcement of dissociation provisions in the operating agreements of the LLC to divest Plaintiff of its authority to act as a co-managing member. [*Id.* at ¶ D-G].

[15] The Agreement provides that "Rohrig and the Loudermilk Parties will divide the LLCs' Properties." [Settlement Agreement § 1].

obligations under the Agreement, Plaintiff's claims against 3110 for specific performance and breach of contract will be dismissed.

### v. Promissory Estoppel

Plaintiff also argues that its allegations state a saving claim of promissory estoppel that estops 3110 and the Loudermilk Parties from refusing to perform. To establish promissory estoppel, Plaintiff must allege facts showing (1) a promise made by Defendants; (2) Defendants should have reasonably expected Plaintiff to rely on the promise; (3) Plaintiff relied on the promise to its detriment; and (4) injustice can only be avoided by enforcing the promise. *Hendon Props., LLC v. Cinema Development, LLC*, 275 Ga. App. 434, 438-39, 620 S.E.2d 644, 649 (2005). The reliance Plaintiff must show is reasonable reliance. *First Bank of Georgia v. Robertson Grading, Inc.*, 328 Ga. App. 236, 242, 761 S.E.2d 628, 635 (2014). Plaintiff must have "relied exclusively on such promise and not on his or her own preconceived intent or knowledge" and must have "exercised due diligence so as to justify such reliance as a matter of equity[.]" *Id.* (citation omitted).

With respect to 3110, Plaintiff has not alleged facts showing any promise made by 3110. And, as discussed above, Plaintiff has not alleged sufficient facts to show any other person or entity had actual or apparent authority to make promises on behalf of 3110. Furthermore, as the Loudermilk Parties argue, Plaintiff was in the best position to bind 3110 to the contract. Its failure to do so demonstrates a lack of reasonable reliance for purposes of promissory estoppel. Accordingly, Plaintiff's claim of promissory estoppel against 3110 will be dismissed.

### 2. Contract Claims Against the Loudermilk Parties

In the Dismissal Order, the Court found that it was not legally possible for the Loudermilk Parties to convey all of the Disputed Property when the property owner refused to

cooperate in the transfer. The Court held in the alternative that Section 3.0 of the Settlement

Agreement was unenforceable due to the legal insufficiency of the property description. Unless

Plaintiff can show the Court erred in the Dismissal Order, the same analysis will apply to the

Second Motions to Dismiss.

### a. Specific Performance and Promissory Estoppel  Against the Loudermilk Parties

Before turning to those issues, the Court will address Plaintiff's claims for

specific performance and promissory estoppel against the Loudermilk Parties. A court cannot

order specific performance of the transfer of property when the owner of the property is not a

party to the contract. *Jolles v. Holiday Builders, Inc.*, 222 Ga. 358, 360, 149 S.E.2d 814, 815

(1966); *see also* O.C.G.A. § 23-2-134. In *Jolles* a corporation entered into a contract to sell

property to the plaintiff. The corporation's president signed the contract on behalf of the

corporation. However, the property was actually owned by the president and not the corporation.

The court held the corporation "could not be required to specifically perform the contract,

because, under the allegations of the petition, this corporation does not hold title to the land

described in the contract." *Jolles*, 222 Ga. at 360, 149 S.E.2d at 815. Furthermore, the owner of

the property could not "be required to specifically perform a contract made by a corporation of

which he is president, even though, in his capacity as an officer of the corporation, he signed the

contract. In law, he and the corporation are entirely separate and distinct entities." *Id.*

In this case, 3110 is the owner of the 8 at 8 Properties. And, as explained above, it

is not a party to the contract. Therefore, Plaintiff cannot compel specific performance from the

Loudermilk Parties, and the claim for specific performance will be dismissed.

To the extent Plaintiff asserts a savings claim of promissory estoppel against the

Loudermilk Parties, that claim also fails and will be dismissed. The law of promissory estoppel is

37

set forth above in Part V.A.1.c.v. As explained, Plaintiff knew 3110 was the owner of the 8 at 8 Properties and was in the best position to bind 3110 to the contract but failed to do so. Furthermore, promissory estoppel does not apply to vague or indefinite promises. *Cheeley Inv., L.P. v. Zambetti*, 332 Ga. App. 115, 119, 770 S.E.2d 350, 355 (2015); *Mooney v. Mooney*, 245 Ga. App. 780, 783, 538 S.E.2d 864, 868 (2000). As detailed below, the property description with respect to the Disputed Property is not sufficient to be enforced and therefore cannot be relied upon for purposes of promissory estoppel.

### b. Plaintiff's Motion to Reconsider

Moving on to Plaintiff's claim for damages for breach of contract, in its Motion to Reconsider, Plaintiff contends the Court made two manifest errors of law or fact: (1) it erred in its construction of the phrase "legally possible" and (2) it erred in finding the property description inadequate. The Settlement Agreement provides that "[i]n consultation with Rohrig's surveyors and attorneys, and to the extent it is legally possible, the Loudermilk Parties will obtain from 3110 Roswell Road, LLC and convey to Rohrig by limited warranty deed an extension of the property lines for the 8 at 8 Property …." [Settlement Agreement § 3.0]. In the Dismissal Order, the Court determined that because O.C.G.A. § 44-5-30 requires a deed to be signed by its maker and because execution of the deed is required to pass title of real property, the Loudermilk Parties were restricted by law in transferring any more property than 3110 was willing to convey. [Doc. 21 at 15]. Thus, the transfer was not legally possible. The Court noted that finding a lack of legal possibility based on a statutory restriction was consistent with Plaintiff's interpretation of "legally possible" as referring to the type of restrictions imposed by statutes, ordinances, or regulations. [*Id.*].

38

### i. The Court's Interpretation of Legally Possible

Plaintiff contends the Court's interpretation is not consistent with Plaintiff's interpretation of "legally possible" and that it has always argued that "legally possible" tests whether the extension is legally possible. Plaintiff further contends the Court erred in failing to resolve ambiguities in the language in favor of Plaintiff on a Rule 12(b)(6) motion to dismiss.[16]

Taking the allegations as true, there is no legal impediment to the transfer of the land *by 3110*. Thus, the transfer of the 8 at 8 Properties, as a general matter, is not legally impossible. However, it is legally impossible for the Loudermilk Parties to obtain the Property from 3110 and convey the Property to Plaintiff without the cooperation of 3110[17]. Plaintiff has not shown any manifest error of fact or of law in the Court's determination that the transfer of the Disputed Property is not legally possible. The fact that Plaintiff believes the phrase is ambiguous does not serve as a basis for reconsideration.

Plaintiff contends the "legally possible" language applies to the extension of the property lines,[18] such that the lines must be extended unless "some intervening law, regulation,

---

[16] Plaintiff also argued that the Court's interpretation will become erroneous if, through its Amended Complaint, Plaintiff demonstrates 3110 was bound by the Agreement. As noted above, Plaintiff's Amended Complaint does not contain sufficient allegations to state a claim against 3110 because the allegations do not show 3110 is bound to or has any obligations under the Agreement.

[17] The Court notes that under Georgia law, a lack of cooperation by a third party generally is not a basis to relieve a contracting party of its obligations under the contract. "The inability to control the actions of a third person whose consent or cooperation is needed for the performance of an undertaking is ordinarily not to be regarded as an impossibility avoiding the obligation. … And [t]hat it may be unwise or disadvantageous or place a hardship on one party furnishes no reason for not enforcing the contract as made." *EZ Green Assoc., LLC v. Georgia-Pacific Corp.*, 318 Ga. App. 655, 660, 734 S.E.2d 485, 490 (2012) (quotation marks and citations omitted). However, the general rule that "subjective impossibility, that is, impossibility which is personal to the promisor and does not inhere in the nature of the act to be performed, does not excuse nonperformance of a contractual obligation" only applies "in the absence of a contract provision in that regard." *Hampton Island, LLC v. HAOP, LLC*, 306 Ga. App. 542, 547-48, 702 SE 2d 770, 775 (2010) (quoting *Bright v. Stubbs Props., Inc.*, 133 Ga. App. 166, 166-67, 210 S.E.2d 379, 380 (1974)); *see also* Williston on Contracts § 77:54 (4th ed.) ("The common law doctrine of impossibility is applied by default. It does not apply when the parties have agreed, by the terms of their contract, to a different allocation of risks.") In this case, the "legally impossible" language is just such a provision and the default rule would not apply.

[18] The Court is mindful of the fact that the transfer of the 8 at 8 Property and the Breezeway easement were not similarly conditioned on being legally possible. As such, the Loudermilk Parties have no potential escape clause in the event it is unable to deliver those property interests to Plaintiff.

ordinance, or competing property right over which 3110 has no control obstructs the *continuation* of such extension …." [Doc. 23 at 5 (emphasis in original)]. In this sense, Plaintiff is not so much arguing about the interpretation of the phrase "legally possible" but instead arguing about what it modifies. But the Agreement makes no reference to what 3110 can or cannot control; rather it expressly imposes an obligation on the Loudermilk Parties to deliver what they can obtain from 3110. Again, this is not the type of manifest error of fact or law that justifies reconsideration of theDismissal Order.

### ii. Sufficiency of the Property Description

Turning to the sufficiency of the property description, the Agreement provides that the Loudermilk Parties will obtain and deliver to Plaintiff a limited warranty deed for "property known as the 8 at 8 space subject to encumbrances of record," "an extension of the property lines for the 8 at 8 Property westward to Early Street … includ[ing] cross easements for the benefit of 3110 … and the Loudermilk Parties," and "an easement for pedestrian traffic to the portion of the 3110 Roswell Road property commonly known as the 'breezeway.'" [Settlement Agreement § 3.0]. In the Dismissal Order, the Court concluded that this description failed to locate the boundaries of the Disputed Property and that no extrinsic evidence in existence prior to the Agreement provided a means for locating those boundaries. [Doc. 21 at 19-20].

Plaintiff contends the Court's decision hinged on a mistake of fact about the location of the 8 at 8 Property and whether it could serve as a key to determine the boundaries of the Disputed Property. Plaintiff further contends the Court erred in concluding the word "extension" could not be used to locate the boundaries of the Disputed Property because the Court failed to consider the extension in conjunction with the 8 at 8 Property. Plaintiff further contends the Court erred in suggesting that any applicable extrinsic evidence must contain a

legally sufficient description of the Property as opposed to making such a description readily ascertainable and that such extrinsic evidence did not exist at the time of the Agreement. Finally, Plaintiff contends the Court erred in concluding that the Breezeway easement was dependent directly or indirectly on the extension of the property lines.

With respect to the location of the 8 at 8 Property, the Court did question the nature of the 8 at 8 Property and the accuracy of its street address. [Doc. 21 at 17-18 and n.4 & 6]. The Court further stated that "the use of the word 'extension' does not render the description legally adequate, as it does not indicate the location of the 8 at 8 Property and does not provide a means of identifying all the boundaries of the … [D]isputed [P]roperty." [*Id.* at 18 (emphasis added) (footnotes omitted)]. Plaintiff is correct that, as a physical landmark, the location of the 8 at 8 Property could be readily ascertained at the time of the Agreement. To the extent the Dismissal Order suggested otherwise, it was in error. In reaching its decision the Court assumed that the 8 at 8 Property was located at the 3110 Roswell Road address, and the Court's question about the address of the 8 at 8 Property did not inform the Court's conclusion.

With respect to the terminology used by the Court when discussing the requirements to satisfy the statute of frauds,[19] Plaintiff argues the Court's use of the word "description" imposes a higher burden on Plaintiff than required by law. However, the Court discussed in detail the requirement of a legal description, which is the ability to readily ascertain the boundaries of real property. If the contract and applicable extrinsic evidence allow the boundaries of the property to be readily ascertainable—i.e., they show the "precise location and boundaries" of the property at issue or "disclose[s] with sufficient certainty … *the quantity and location* of the land"—then they meet the requirement for an adequate legal description. *Daniel*

---

[19] Under the statute of frauds, a contract for the sale of land must be in writing and must contain a legally sufficient description of the property. O.C.G.A. § 13-5-30(4); *Salim v. Solaiman*, 302 Ga. App. 607, 609, 691 S.E.2d 389, 391 (2010).

*Mill, LLC v. Lyons*, 283 Ga. App. 604, 606, 642 S.E.2d 226, 227 (2007); *Oconee Land &
Timber, LLC v. Buchanan*, 300 Ga. App. 853, 856, 686 S.E.2d 452, 454 (2009) (emphasis in
original). The Court determined the boundaries of the Disputed Property were not so
ascertainable; it did not require a pre-exiting metes and bounds description of the Disputed
Property.

Plaintiff argues that having established the location of the 8 at 8 Property,
identifying the remaining borders of the Disputed Property is merely a mechanical process of
drawing a line along the northern edge of the 8 at 8 Property and continuing it to Early Street.[20]
In addition, Plaintiff argues that "extension of property lines" must be interpreted to mean a
straight line.[21] Thus, Plaintiff argues, the Disputed Property is bounded at the east by Roswell
Road, bounded on the north by the aforementioned new line, bounded on the west by Early
Street and bounded on the south by an existing property line.

However, the dictionary definition of "extend" or "extension" does not require a
straight line. It can mean, among other things, "to spread or stretch forth: unbend," "to stretch out
to fullest length," or "to cause to be longer" *Extend*, Mirriam-Webster.com (last visited March 2,
2018). It can also mean "an enlargement in scope or operation," "a part constituting an addition,"
or "a section or line segment forming an additional length." *Extension*, Mirriam-Webster.com
(last visited March 2, 2018). The Court is not persuaded that given these definitions, use of the
word "extension" dictates a course that runs straight out from the northern wall of the 8 at 8
Property. Plaintiff argues it should have the opportunity to put on testimony of experts as to the

---

[20] *See In Kauka Farms, Inc. v. Scott*, 256 Ga. 642, 644, 352 S.E.2d 373, 376 (1987) (finding a description adequate
when it did not require "the future exercise of judgment" but rather "the mechanical following of directions.").
[21] *Kauka Farms, 256* Ga. at 644, 352 S.E.2d at 376 (applying the dictionary definition of "surrounding" in
interpreting a property description). *See also* O.C.G.A. § 13-2-2(2) (in interpreting a contract, "[w]ords generally
bear their usual and common signification").

meaning of extend. But Plaintiff's disagreement with the Court's interpretation of "extend" is not a basis for reconsideration.

Further, in the absence of a specific course for the extended property lines, the Agreement's use of the phrase "westward to Early Street" further muddies the water. *See Smith v. Georgia Indus. Realty Co.*, 215 Ga. 431, 432-33, 111 S.E.2d 37, 39 (1959) (words such as "easterly" are too indefinite when applied to a course to adequately describe real property "without the use of other qualifying words"); *Wisener v. Gulledge*, 251 Ga. 419, 421-22, 306 S.E.2d 642, 643-45 (1983) (description had sufficient keys to allow an indefinite "eastward" reference in a property description to be fixed by parol evidence); *Hughes v. Heard*, 215 Ga. 156, 159, 109 S.E.2d 510, 513 (1959) (a boundary line described as beginning at a corner and running northwest to the original east and west line was "too vague and indefinite" to identify the land as it "could be a straight line from the beginning point to the north original line of the lot at any location on the lot west of a due north course from such point[.]"). Extending the line westward to Early Street fails to specify where along Early Street the property line will terminate.

Even if the Court fully agreed with Plaintiff's analysis of the "extension" language, the southern boundary of the Disputed Property remains a problem. In the Dismissal Order, the Court pointed out that on both the Rohrig Survey and Defendants' plat of the Disputed Property, "the southern property line does not extend in a straight line, but bends around the building before proceeding to Early Street." [Doc. 21 at 18, n.7]. Plaintiff's Reply addresses this concern by stating that "the parties and their attorneys/surveyors have never maintained that 8 at 8's southern line needed extending, as it already terminates at Early Street."[22] [Doc. 38 at 5 n.5].

_____

[22] Additionally, Plaintiff asserts that the "only line on the pre-existing survey that is not *already* extended Westward to Early Street is the Northern line that borders the Breezeway on the left." [Doc. 23 at 21]. Plaintiff's Reply further states that its surveyor "inherited three of the four required boundaries (i.e., the eastern, southern, and western

In fact, all parties have now filed pleadings indicating their agreement that the southern property line for the Disputed Property is fixed and not in dispute. [Docs. 51 at 2-3, 52 at 1, 53 at 1]. For purposes of this Order, the Court will accept this consensus among the parties as to their intent as to the southern property line while noting it is not reflected in the language of the Agreement, which makes no mention of an existing property line serving as the southern boundary of the Disputed Property.

The cases cited by Plaintiff in support of its position highlight the omission as they involve a pre-existing boundary (street or property line) used to determine the boundaries of the transferred property, and that boundary was expressly referenced in the contract's descriptive language, although it might have required resort to extrinsic evidence to determine the boundary's exact location. *Penta Inv., Inc. v. Robertson*, 230 Ga. 401, 402, 197 S.E.2d 358, 359 (1973) (the contract provided for the sale of all the seller's property that lay north of New Hope Road); *Bowles v. Babcock & Wilcox Co.*, 209 Ga. 858, 858, 76 S.E.2d 703, 705 (1953) (contract provided for the sale of property bounded by an existing road, a third party's property, a proposed highway, and a proposed road extension). Plaintiff contends that "by definition, the pre-existing Northern line on the 8 at 8 was to be extended to Early Street so as to create a new boundary between 3084 Roswell Road and 3110 Roswell Road, with Plaintiff to receive all of the 3110 Roswell tract that is South of the new boundary and 3110 to retain all of the 3110 tract North of the new boundary[.]" [Doc 23 at 15]. This notion that Plaintiff was to receive all of 3110's property that lay south of the northern 8 at 8 line is simply absent from the Settlement Agreement. Thus, even taken together, the parties' agreement as to the southern boundary, the

---

boundaries)" and all that was required was "extending the single northern boundary to Early." [Doc. 38 at 5 (emphasis in original)].

fixed location of the 8 at 8 Property and the "extension" do not lead to the identification of all the boundaries of the Disputed Property as proposed by Plaintiff.

In addition to the aforementioned cases, Plaintiff cites to three cases in which square tracts were to be divided and conveyed based on a proportion of the tract or a specific number of acres in reference to a particular side of the tract. In *Belk v. Nance*, 232 Ga. 264, 206 S.E.2d 449 (1974), the contract between the parties provided for the sale of the "South one half of Land Lot 249, 11th District, 3rd Section, Whitfield County, Georgia." *Id.* at 265, 206 S.E.2d at 450. When the sellers refused to close the sale, the buyer brought an action for specific performance. The sellers argued the contract was too indefinite to allow specific performance. The court disagreed, taking judicial notice "that each of the original land lots in Whitfield County is in the form of a square" and therefore the south one half of a lot "is a readily ascertainable tract of land …." *Id.* at 266, 206 S.E.2d at 451.

*Vaughn v. Fitzgerald*, 112 Ga. 517, 37 S.E. 752 (1900), involved the west 65 acres of a square lot of land. The court found such a description to be sufficient because the 65 acres could be ascertained by "cutting off a parallelogram from that [west] side. Any surveyor who understands his business can easily, having as a basis the western boundary of the lot, the location of the northwest and southwest corners, and the direction of the north and south lines, lay off such a parallelogram." *Id.*at 519, 37 S.E. at 753.

In *Rowland v. Mathews*, 153 Ga. 849, 113 S.E. 442 (1922), a testator devised a square lot of land consisting of 202 ½ acres to his three children. The son was to receive the eastern 75 acres, and the first daughter was to receive the center 25 acres. *Id.* at 854, 113 S.E. at 444. The second daughter was to receive "25 acres of land, west side land lot (No. 61) sixty-one, and being all of said lot except tract including fishpond about -- acres, and two tracts given to her

45

brother and sister ….” *Id.* at 855, 113 S.E. at 445. The court found all three devises were ascertainable. As to the son, his devise could be accomplished by “drawing a line across the entire lot, parallel with its eastern boundary, so as to cut off 75 acres.” *Id.* at 854, 113 S.E. at 444. As to the first daughter, her lot was not only described as in the center of the lot but also as being bounded on the east by the son’s land and bounded on the west by the second daughter’s land. Thus, the court construed the word “center” to mean between the other two lots. Again the devise could be accomplished by drawing a line from north to south parallel with the eastern boundary represented by the son’s lot, so as to cut off 25 acres. *Id.*, 113 S.E. at 444-45. The second daughter’s devise consisted of all the remaining lot (approximately 100 acres) except the fish pond, which occupied less than an acre. The question was whether she was limited to 25 acres, because that number was specified in the will. The court found the second daughter was entitled to the entirety of the approximately western 100 acres as the description “includes all the land lot except the excepted three named tracts,” and the acreage portion of the description was dismissed as false and surplusage. *Id.* at 856, 113 S.E. at 445.

      *Belk*, *Vaughn*, and *Rowland* all involved dividing a square lot, and the geometric shape itself aided in ascertaining the boundaries of the transferred property. S*ee also Kauka Farms*, 256 Ga. at 643, 645, 352 S.E.2d at 375-76 (1987) (property described as the seller’s “home and 20 acres of land immediately surrounding his home” was “clear on its face as to size, shape, and location” because “surrounding” language indicated a circle with the house at its center). By contrast, the Settlement Agreement does not contemplate splitting a regularly shaped lot, but proposes to carve out a portion of the lot. Thus it is more like those cases in wihich a property description includes a building and definite acreage, but “tells nothing of the configuration of the land described,” provides “no key to the boundaries of the land and indeed

46

no clue to the configuration," and provides "no definite indication of either size, shape, or location" of the land to accompany the building and therefore is not sufficient to grant specific performance. *Id.* at 644-45, 352 S.E.2d at 376 (citing *Laurens Cty. Bd. of Edu. v. Stanley*, 187 Ga. 389, 200 S.E. 294 (1938); *Williams v. Manchester Bldg. Supply Co.*, 213 Ga. 99, 97 S.E.2d 129 (1957); *Plantation Land Co. v. Bradshaw*, 232 Ga. 435, 207 S.E.2d 49 (1974)).

As noted in the Dismissal Order, so long as the description is adequate a subsequent survey may be used to determine the exact acreage. [Doc. 21 at 17]. But the missing element in the Settlement Agreement is not only acreage. Unlike *Penta*, the Settlement Agreement does not provide for the transfer of all land owned by 3110 south of a straight line running from Roswell to Early along the northern wall of the 8 at 8 Property, nor does it lead to a key demonstrating such intent by the parties.[23] Also, as explained in the Dismissal Order, the inadequacy of the property description prevents application of any exceptions to the statute of frauds based on Plaintiff's performance. O.C.G.A. § 13-5-31(2), (3); [Doc. 21 at 21].

### iii. The Breezeway Easement

With respect to the Breezeway easement, Plaintiff contends the Court erred in concluding its conveyance was indirectly dependent on the extension of the property lines. Plaintiff argues that the Breezeway easement is plotted definitely and labeled explicitly, citing to Exhibits C and D of the Original Complaint. However, those exhibits contain surveys and plats that were prepared after execution of the Agreement.[24] A survey dated September 17, 2007

---

[23] If the Loudermilk Parties had proffered a deed acceptable to Plaintiff, any discrepancy between the Agreement and the deed as to the southern boundary—or any other boundaries—would be irrelevant, as the full performance and acceptance would satisfy the statute of frauds. But, where there is a dispute over the property to be conveyed, the Court is compelled to look to the written agreement and any extrinsic evidence unlocked by a key. Here, there is simply not enough information in writing to ascertain all the boarders of the Disputed Property, notwithstanding any unwritten understandings by the parties.

[24] Plaintiff has suggested that it can rely on extrinsic evidence created after execution of the Agreement but before the Court entered an order approving the Agreement. But Plaintiff offers no authority for such a rule, which would

attached to the Motion for Reconsideration shows an area marked as "Breezeway," which appears to correspond to the Breezeway identified on the post-Agreement surveys. [Doc. 23-1 at 12; Doc. 29, Ex. 5]. Although this is not newly-discovered evidence, it does show the Court erred in concluding the Breezeway easement was not sufficiently described, as its boundaries might be determined by reference to extrinsic evidence in existence prior to execution of the Agreement.

Based on the foregoing, the location of both the 8 at 8 Property and the Breezeway Easement are ascertainable and the provisions in the Agreement relating to those property interests are enforceable against the Loudermilk Parties. However, the Disputed Property is not so ascertainable and any agreement to transfer it cannot be enforced. Therefore, the Court will deny the Second Motion to Dismiss to the extent Plaintiff seeks damages for failure of the Loudermilk Parties to convey the 8 at 8 Property or the Breezeway,[25] and will grant the Second Motion to Dismiss to the extent Plaintiff seeks damages for failure to convey the Disputed Property.

**B. Count IV: Quantum Meruit and Unjust Enrichment Against 3110**

Quantum meruit and unjust enrichment provide a path for recovery of the value of benefits conferred on the opposing party in the absence of an enforceable express contract. *See* O.C.G.A. § 9-2-7; *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 28, 485 S.E.2d 563, 571 (1997). To state a claim for quantum meruit, Plaintiff must allege facts to show: (1) Plaintiff performed as agent services valuable to 3110; (2) Plaintiff did so at the request of 3110 or 3110 knowingly accepted the services; (3) 3110's receipt of the services without compensating

---

effectively undermine the concept of a meeting of the minds by allowing one party to create and rely on documents not in existence at the time the opposing party agreed to the terms of the contract.

[25] The executed deed tendered to Plaintiff included the 8 at 8 Property, but not the Breezeway easement. However, as alleged in the Amended Complaint, the deed was not tendered within the time required by the Agreement.

Plaintiff would be unjust; and (4) Plaintiff expected compensation at the time of rendering the services. *Hollifield v. Monte Vista Biblical Gardens, Inc.*, 251 Ga. App. 124, 128-29, 553 S.E.2d 662, 668 (2001). To state a claim for unjust enrichment, Plaintiff must allege facts to show (1) there is no legal contract; (2) 3110 has been conferred a benefit by Plaintiff; and (3) 3110 equitably ought to return or compensate for the benefit. *Wachovia Ins. Servs., Inc. v. Fallon*, 299 Ga. App. 440, 449, 682 S.E.2d 657, 665 (2009). In addition, "the party conferring the … things of value must act with the expectation that the other will be responsible for the cost." *Hollifield*, 351 Ga. App. at 131, 553 S.E.2d at 670.

"The measure of damages under quantum meruit or unjust enrichment is based upon the benefit conferred upon the defendant and not upon the cost to render the service or cost of the goods. *Zampatti v. Tradebank Intern. Franchising Corp*., 235 Ga. App. 333, 340, 508 S.E.2d 750, 757 (1998). There can be no recovery when the benefit conferred is of no value to the recipient. *Hollifield*, 251 Ga. App. at 129-30, 553 S.E.2d at 669.

As explained above, Plaintiff has not alleged sufficient facts to show the existence of a legal contract between Plaintiff and 3110; thus, the threshold basis for relief is satisfied. However, the only benefit conferred on 3110 is a release of claims by Plaintiff that broadly applied to all the related Loudermilk constituencies. Plaintiff has not alleged facts to show that such a release provided any value to 3110, for example by identifying specific claims forgone by the release.

Plaintiff attempts to show a benefit to 3110 by connecting 3110 to the Parking Rights Dispute. Plaintiff alleges that the release of the parking rights affidavit enabled 3116 to move forward with the sale of real property for an amount in excess of $10 million. Plaintiff argues that because Charlie Loudermilk is an owner of 3116, he benefits from the release of the

parking rights affidavit. Because Charlie also owns 3110, 3110 benefits from the release as well. This argument overlooks the fact that 3116, Charlie Loudermilk, and 3110 are all separate legal entities. "'The corporate identity is entirely separate from the identity of its officers and stockholders. A corporation and even its sole owner are two separate and distinct persons.'" *Patel v. Patel*, 37 Ga. App. 733, 734, 761 S.E.2d 129, 131 (2014) (quoting *Nationwide Mtg. Svcs., Inc. v. Troy Langley Constr. Co.*, 280 Ga. App. 539, 542, 634 S.E.2d 502, 506 (2006)); *Levy v. Reiner*, 290 Ga. App. 471, 473, 659 S.E.2d 848, 851 (2008).

The Amended Complaint alleges that Charlie Loudermilk, Robin Loudermilk, and Greg Howard have individual and personal ownership interests in 3116. [Amended Complaint ¶ 71]. There is no allegation that 3110 has any interest in 3116, and a benefit-by-association argument will not carry the day for Plaintiff, even on a motion to dismiss. Plaintiff has not alleged facts to show a valuable benefit conferred on 3110. Accordingly, Count IV of the Amended Complaint will be dismissed.

### C. Count V: Reformation of the Settlement Agreement Against All Defendants

"Reformation of a contract is an equitable remedy for correcting an instrument to make express the true intention of the parties, where from some cause, such as fraud, accident, or mistake, it does not express such intention." *Anthony v. Grange Mut. Cas. Co.*, 226 Ga. App. 846, 847, 487 S.E.2d 389, 391 (1997) (citing *Cotton States Mut. Ins. Co. v. Woodruff*, 215 Ga. App. 511, 511-12, 451 S.E.2d 106, 107 (1994)). To state a claim for reformation of a contract, Plaintiff must allege facts to show a mutual mistake or a mistake on one side and fraud on the other. *Executive Excellence, LLC v. Martin Bros. Investments, LLC*, 309 Ga. App. 279, 287-88, 710 S.E.2d 169, 177 (2011). A mistake is "some unintentional act, omission, or error, arising from ignorance, surprise, imposition, or misplaced confidence" and may be either of fact or law.

*Ledford v. Smith*, 274 Ga. App. 714, 726-27, 618 S.E.2d 627, 637 (2005); O.C.G.A. § 23-2-21

(defining "mistake" for purposes of equitable relief). The mistake must be mutual such that

> both [parties] must have labored under the same misconception in
> respect of the terms and conditions of a written instrument,
> intending at the time of the execution of the instrument to say one
> thing and by mistake expressing another, so that the instrument as
> written does not express the contract or intent of either of the
> parties.

*Id.* at 727, 618 S.E.2d at 637. "[T]he negligence of the complaining party will not defeat his right

to reformation if the other party has not been prejudiced." *Curry v. Curry*, 267 Ga. 66, 67, 473

S.E.2d 760, 761 (1996). Evidence of the mistake must be "clear, unequivocal, and decisive …."

O.C.G.A. § 23-2-21(c). But "there is no rule that reformation will be denied unless the mistake

be admitted by both parties." *Fox v. Washburn*, 264 Ga. 617, 618, 449 S.E.2d 513, 514 (1994)

(citations omitted).

Plaintiff has not alleged fraud by Defendants. Therefore, the only issue for the

Court to consider is whether Plaintiff has alleged mutual mistake. Plaintiff does not identify any

specific mutual mistake but merely asks the Court to reform the Agreement to effectuate the true

intention of the parties to the extent the Court is not inclined to enforce Section 3.0. Whether

Plaintiff is merely seeking reform of Section 3.0 or broader reform of the Agreement is not clear.

Although, the parties have all acknowledged the existence of at least one mutual mistake, as it

relates to the southern boundary of the Disputed Property, reform of that mistake alone will not

affect the enforceability of Section 3.0. With respect to other possible mistakes, Plaintiff's claim

fails because it did not specify the reforms it seeks, *see Birdette v. Saxon Mortg.*, No. 1:11-cv-

2157, 2011 WL 13176232, at *6 (N.D. Ga. Oct. 21, 2011), and the Court will dismiss Count V of

the Amended Complaint.

## VI. Conclusion

Plaintiff has not alleged sufficient facts to show 3110 is bound to the Settlement Agreement through principles of agency or any other theory. Plaintiff also has failed to allege facts to show 3110 has any obligations under the Agreement or that it made any promises subject to estoppel. In addition, Plaintiff has failed to allege 3110 received a valuable benefit from Plaintiff for which Plaintiff should be compensated. Accordingly, the Court will grant 3110's Second Motion to Dismiss and will dismiss all claims against 3110.

With respect to the Loudermilk Parties, because they do not own the 8 at 8 Properties, Plaintiff has failed to state a claim for specific performance against them. Plaintiff may be entitled to damages for breach of contract, to the extent the Loudermilk Parties failed to satisfy all their obligations as to the 8 at 8 Property and the Breezeway easement. However, Plaintiff has failed to state a claim for breach of contract or promissory estoppel as to the Disputed Property because the Loudermilk Parties discharged their obligations under the contract and because the property description is insufficient for enforcement. Therefore, the Court will grant the Loudermilk Parties' Second Motion to Dismiss as to the claims for specific performance, promissory estoppel, and breach of contract as to the Disputed Property. The Court will deny the Second Motions to Dismiss as to the claims against the Loudermilk Parties for breach of contract as to the 8 at 8 Property and the Breezeway easement. In addition, the Court will grant Plaintiff's Motion to Reconsider with respect to the sufficiency of the property description for the 8 at 8 Property (itself as opposed to any extension thereof) and the Breezeway easement, and will deny the Motion to Reconsider in all other respects. Finally, Plaintiff has failed to allege sufficient facts to show a mutual mistake as the Settlement Agreement and the

Court will grant the Second Motions to Dismiss as to Plaintiff's claim for reformation of the contract.

**END OF ORDER**

**<u>Distribution List</u>**

David L. Bury, Jr.
Stone & Baxter, LLP
Suite 800
Fickling & Co. Building
577 Mulberry Street
Macon, GA 31201

Ward Stone, Jr
Stone & Baxter LLP
Suite 800 Fickling & Company Bldg
577 Mulberry Street
Macon, GA 31201

Sean A. Gordon
Greenberg Traurig, LLP
Terminus 200 - Suite 2500
3333 Piedmont Road, NE
Atlanta, GA 30305

Michael J. King
Greenberg Traurig, LLP
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, GA 30305

George M. Geeslin
Two Midtown Plaza, Suite 1350
1349 West Peachtree Street, NW
Atlanta, GA 30309