

**IT IS ORDERED as set forth below:**

**Date: January 27, 2022**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:

ROHRIG INVESTMENTS, LP

     Debtor.

CASE NO. 13-53483-BEM

CHAPTER 11

ROHRIG INVESTMENTS, LP,

     Plaintiff,

v.

KNUCKLE PARTNERSHIP, LLLP; 3116-3136
ROSWELL ROAD, LLC; and ROBERT C.
LOUDERMILK, JR.,

     Defendants.

ADVERSARY PROCEEDING NO.
16-5151-BEM

## O R D E R

This matter is before the Court on Plaintiff Rohrig Investments, LP's *Motion for Partial Summary Judgment* (the "Motion"). [Doc. 118]. Plaintiff seeks summary judgment on Defendants' liability for breach of contract. Defendants Knuckle Partnership, LLLP, 3116-3136

Roswell Road, LLC, and Robert C. Loudermilk, Jr. ("Defendants" or "Loudermilk Parties") filed a response [Doc. 132] and Plaintiff filed a reply [Doc. 137]. The Motion is now ripe for determination.

## I. Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure ("Rule") 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56 requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). Evidence and reasonable inferences are construed in favor of the nonmoving party. *Fernandez v. Trees, Inc*., 961 F.3d 1148, 1152 (11th Cir. 2020).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party does not have to respond to a motion for summary judgment with affidavits or other evidence "unless and until the movant has properly supported the motion with sufficient evidence." *United States v. Twenty (20) Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand ($200,000) Dollars in U.S. Currency*, 897 F.2d 1567, 1569 (11th Cir. 1990) (quotation marks and citation omitted). A fact is material if it "might affect the outcome of the suit under the governing law …." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

At the summary judgment stage the Court "'must not resolve factual disputes by weighing conflicting evidence[.]'" *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (*quoting Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986)). Furthermore, "[s]ummary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. ... If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *United States v. Twenty (20) Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand ($200,000) Dollars in U.S. Currency*, 897 F.2d 1567, 1569 (11th Cir. 1990) (citations omitted).

## II. Material Facts Not in Dispute

Plaintiff filed a S*tatement of Material Facts as to Which There Is No Genuine Issue to Be Tried*. [Doc. 120] and the Loudermilk Parties filed a *Response to Statement of Material Facts*. [Doc. 133]. Based on these papers and on the record, the Court finds the following facts are not in dispute:

Toward resolving various disputes between the parties and several of their affiliated entities in Plaintiff's Chapter 11 case and related adversary proceeding, the parties undertook settlement discussions beginning by at least October 23, 2014. [Doc. 120 ¶ 1; Doc. 133 ¶ 1]. That day, Plaintiff's counsel transmitted a written settlement proposal to Defendants' attorney. [Id.]. The proposal included conveyance to Plaintiff of the building known to the parties as the "8 at 8 building" and property behind the building, the boundaries of which are in dispute (the "Disputed Property"). [Id.]. The 8 at 8 building and the Disputed Property were owned by 3110 Roswell Road, LLC, whose sole member was R. Charles Loudermilk, Sr. ("Loudermilk Sr."). [Amended Complaint, Doc. 27 ¶ 52, 53; Answer to Amended Complaint, Doc. 82 ¶ 52, 53]. Loudermilk Sr. is the father of Defendant Robert C. Loudermilk, Jr. ("Loudermilk Jr."). [Doc. 27 ¶ 12; Doc. 82 ¶

12]. On October 25, 2014, Defendants' counsel responded, stating, inter alia, that the 8 at 8 building would be transferred, but without an extension of the Disputed Property to Early Street. Plaintiff rejected this offer, but settlement discussions continued. [Doc. 120 ¶ 1; Doc. 133 ¶ 1]. Ultimately, a verbal agreement was reached during an in-person meeting at the courthouse on October 28, 2014. [Id.].

Upon reaching consensus, the parties returned to this Court's courtroom and the terms of the agreement were recited by counsel into the record of this Court. [Doc. 120 ¶ 1; Doc. 133 ¶ 1]. Michael J. King, counsel for Defendant 3116-3136 Roswell Road, LLC, recited the relevant terms on the record as follows:

> MR. KING: In addition, it is the intention of the parties that, to the extent it is legally possible to extend the property lines bordering the 8 at 8 property to Early Street, which is slightly west from where the 8 at 8 property is, that – and subject to documentation and survey, as necessary, which will be split by Rohrig Investments and Loudermilk on a 50-50 basis up to $10,000.00, –

> THE COURT: And that's when you refer to Loudermilk, Mr. King, you're referring to R.C. Loudermilk, Senior?

> MR. KING: Senior. That's correct.

> THE COURT: All right.

> MR. KING: To the extent that that is possible, a deed will be delivered giving that extension of property, subject to necessary cross-easements, as necessary, to also serve the Loudermilk-Knuckle and other Loudermilk properties.

[Tr. of Oct. 28, 2014 hearing, Doc. 115-2 at 26-27].

Thereafter, the parties and their attorneys worked to memorialize the terms of the settlement agreement in documentation satisfactory to all parties. [Doc. 120 ¶ 2; Doc. 133 ¶ 2]. Before reaching a version of the agreement amenable to all, the agreement went through fifteen

4

drafts. [Doc. 120 ¶ 3; Doc. 133 ¶ 3]. After the extended drafting process, the parties' agreement

was memorialized in an agreed upon final draft. [Doc. 120 ¶ 8; Doc. 133 ¶ 8]. The Settlement

Agreement and Release ("Agreement") was executed by the parties on or about November 7, 2014.

[Id.]. Following Defendants' review of and consent to a proposed motion, the Agreement was

submitted for approval on November 13, 2014 with the filing of a *Motion to Enter Into a*

*Compromise and Settlement Agreement Pursuant to Rule 9019*. [Id.]. The Agreement provided as

follows:

> Within three (3) business days of Authorization, the Loudermilk
> Parties will obtain from 3110 Roswell Road, LLC and deliver to
> Rohrig a Limited Warranty Deed granting title to Rohrig of property
> known as the 8 at 8 space subject to encumbrances of record. The 8
> at 8 space (the "8 at 8 Property") is currently a part of property
> numbered in Fulton County, Georgia as 3110 Roswell Road. In
> consultation with Rohrig's surveyors and attorneys, and to the extent
> it is legally possible, the Loudermilk Parties will obtain from 3110
> Roswell Road, LLC and convey to Rohrig by limited warranty deed
> an extension of the property lines for the 8 at 8 Property westward
> to Early Street subject to documentation and surveys, as necessary.

[Doc. 120 ¶ 10; Doc. 133 ¶ 10].

On November 20, 2014, William Busby, a surveyor from Valentino & Associates,

Inc., went to the 8 at 8 site for purposes of preparing a survey (the "2014 Survey") and legal

description of the property. [Doc. 120 ¶ 11; Doc. 133 ¶ 11]. Loudermilk Jr. and Loudermilk

executive Greg Howard are both real estate professionals who can understand a survey. [Doc. 120

¶ 13; Doc. 133 ¶ 13]. For the Disputed Property, the 2014 Survey depicts a property line across

the loading dock for the adjacent Buckhead Theatre (formerly Roxy Theatre). [Doc. 120 ¶ 13; Doc.

133 ¶ 13, 15].

Rohrig executive John Frasier received the 2014 Survey and legal description from

Busby on November 20, 2014, then sent it to Howard on December 1, 2014. [Doc. 120 ¶ 14; Doc.

133 ¶ 14]. Howard reviewed Busby's work before sending the 2014 Survey and legal description on the same day to real estate attorney Bailey Teague to prepare the limited warranty deed required in Section 3.0 of the Agreement. [Id.]. Loudermilk Jr. also reviewed the 2014 Survey and was aware that Howard was having Teague prepare the deed. [Id.]. Howard instructed Teague to insert into the deed a "permanent, no-build easement" that prevented "any additional buildings or other vertical improvements on the Property." [Doc. 120 ¶ 19, 20; Doc. 133 ¶ 19, 20]. Teague prepared a deed that followed the 2014 Survey but included the no-build easement (the "Draft Deed"). [Doc. 120 ¶ 17; Doc. 133 ¶ 17].

The Court's hearing on the motion to approve the Agreement was held on December 3, 2014. Present at the hearing were David L. Bury, Jr. for Plaintiff, Gary W. Marsh for Loudermilk Jr. and Knuckle Partnership, LLLP, and Sean A. Gordon for 3116-3136 Roswell Road, LLC. The entirety of the discussion of the motion to approve the Agreement was as follows:

> MR. BURY: We're here on the 9019 motion filed by Rohrig Investments, which is seeking authorization to enter into a settlement with the various Loudermilk Parties. Essentially, we've taken the agreement that we announced into the record at the last hearing, and we memorialized that with some consensual changes. We put that out to creditors with, we believe, is adequate notice. We've received no objections, and the parties have also agreed on the form of an order, which should be in the queue. We'd ask the Court, unless you have questions, to go ahead and approve that.

> COURT: OK. Let me just ask Mr. Bury, I know the objections to the Loudermilk claim and Knuckle Partnership were going to be withdrawn as part of the arrangement. They are on the calendar. I assume that's going to be cleaned up.

> MR. MARSH: Yes. Under the settlement we have three days to withdraw those. But we're going to withdraw those. And there's an appeal that the Debtor's going to withdraw. Yeah, all of that will get cleaned up.

> COURT: OK. Does anyone else wish to be heard on the 9019 in Rohrig Investments? I have looked at the settlement agreement and

> it does track what was announced at the last hearing and is a good
> result in a case that as everybody knows was very contentious. This
> may be the shortest hearing we've had in this case in two years. If
> no one else wishes to be heard, I will enter the 9019 order.

[Audio Tr. of Dec. 3, 2014 hearing, 11:14:42 – 11:16:44]. The parties submitted as part of the

approval process an *Order Approving Compromise and Settlement Agreement Among the Rohrig*

*Parties and the Loudermilk Parties* ("Settlement Order"). [Doc. 120 ¶ 9; Doc. 133 ¶ 9]. The

Settlement Order was a joint product of the parties, its signature page stating:

> Order Prepared and Consented to by:
> . . . . Counsel for Rohrig Investments, LP
> . . . . Counsel for The Knuckle Partnership LLLP and Robert C.
> Loudermilk
> . . . . Counsel for 3116-3136 Roswell Road, LLC

[Id.]. The Settlement Order provided that the "terms [of the Agreement] are hereby incorporated

herein as substantive provisions of this Order[.]" [Doc. 115-2 at 555].

The Court entered the Settlement Order on Thursday, December 4, 2014 at 10:45

am. [Doc. 115-2 at 554]. Teague emailed the Draft Deed to Howard at 1:38 pm on December 4,

2014. [Doc. 120 ¶ 18; Doc. 133 ¶ 18]. Howard then emailed it to Frasier at 3:41 pm the same day,

stating he would have it signed by Monday, December 8, 2014. [Id.]. Howard's email to Frasier

failed to mention that the no-build easement had been included in the Draft Deed. [Doc. 120 ¶ 19;

Doc. 133 ¶ 19]. Plaintiff did not accept the Draft Deed. [Doc. 120 ¶ 21; Doc. 133 ¶ 21].

On January 21, 2015, Howard emailed Frasier a revised version of the 2014 Survey,

this time with a reduction in the area of the Disputed Property shaded in blue. [Doc. 120 ¶ 22; Doc.

133 ¶ 22]. Howard informed Frasier that the shaded area was all that 3110 would convey. [Id.].

Plaintiff did not accept the revision. [Id.]. On February 16, 2015, Howard requested Valentino to

prepare a survey and legal description of the shaded area. [Doc. 120 ¶ 23; Doc. 133 ¶ 23]. On

March 17, 2015, Defendants' attorney forwarded to Plaintiff's attorney a deed signed by

Loudermilk Sr. conveying the 8 at 8 building and the abridged, shaded portion of the Disputed

Property. [Id.]. Plaintiff did not accept the deed, and litigation followed. [Id.].

## III. Legal Analysis

### A. Background

At issue is whether the undisputed facts show as a matter of law that Defendants

breached Section 3.0 of the Agreement, which required in part:

> In consultation with Rohrig's surveyors and attorneys, and to the
> extent it is legally possible, the Loudermilk Parties will obtain from
> 3110 Roswell Road, LLC and convey to Rohrig by limited warranty
> deed an extension of the property lines for the 8 at 8 Property
> westward to Early Street subject to documentation and surveys, as
> necessary.

[Doc. 115-2 at 567]. To establish liability for breach of contract, Plaintiff must show a material

breach of the terms of a valid contract by Defendants and resultant damages to a party with the

right to complain about a breach. *Roberts v. JP Morgan Chase Bank, N.A*., 342 Ga. App. 73, 76,

802 S.E.2d 880, 884 (2017); *Bryant v. Progressive Mountain Ins. Co*., 243 F. Supp.3d 1333, 1340

(M.D. Ga. 2017).

The Court previously dismissed Plaintiff's claim against Defendants for breach of

contract with respect to the Disputed Property for failure to state a claim because (1) it was not

legally possible for Defendants to transfer the Disputed Property when 3110, who was not a party

to the Agreement, refused to do so; and (2) the Agreement did not describe the Disputed Property

in a legally sufficient manner. [Docs. 21, 54]. On appeal, the District Court reversed the dismissal

of the claims for damages. [Doc. 74]. The District Court ruled that the better interpretation of the

"legally possible" language in the Agreement had to do with whether zoning or other regulatory

issues affected the ability to extend the property lines. [Id. at 22]. Additionally, the District Court

ruled that while the "Agreement as originally written did not contain a sufficiently definite legal

description" such a sufficient description was created by the 2014 Survey, which was in existence and in possession of all parties when the Bankruptcy Court incorporated the Agreement into the Settlement Order. [Id. at 23-24].

### B. Mandate Rule

Plaintiff contends it is entitled to summary judgment based on the law of the case and mandate rules. Plaintiff contends discovery has confirmed the allegations assumed as true by the District Court and that the record shows an absence of evidence for any defenses to the breach of contract claim. Plaintiff contends the Agreement required Defendants to convey the Disputed Property in conformance with the boundaries on the 2014 Survey and that Defendants failed to do so, thus, breaching the Agreement. Defendants contend factual issues remain to be resolved regarding whether there may be regulatory barriers to conveying the Disputed Property as depicted on the 2014 Survey, whether the description of the Disputed Property has been established as the boundaries on the 2014 Survey, and whether Plaintiff failed to satisfy the condition precedent that the parties meet and confer to draw the property lines.

"The mandate rule is a specific application of the 'law of the case' doctrine which provides that subsequent courts are bound by any findings of fact or conclusions of law made by the court of appeals in a prior appeal of the same case." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018) (internal quotation marks and citations omitted). This rule prohibits courts from "revisiting matters decided expressly or by necessary implication in an earlier appeal of the same case." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1270-71 (11th Cir. 2009). "An argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument." *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005). The trial court "cannot amend, alter, or refuse to apply an

9

appellate court's mandate simply because an attorney persuades the court that the decision giving rise to the mandate is wrong, misguided, or unjust." *Winn-Dixie*, 881 F.3d at 844. However, the circuit court has recognized "narrow" exceptions to the mandate rule in three circumstances: "the presentation of new evidence or an intervening change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice." *Cox Enterprises, Inc. v. News-J. Corp.*, 794 F.3d 1259, 1271 (11th Cir. 2015) (citations omitted). Additionally, "the trial court is free to address, as a matter of first impression, those issues not disposed of on appeal[.]" *Id.* (quotation marks and citation omitted).

Neither party argues that any exception to the mandate rule applies, and the Court finds no basis to apply an exception. The question, then, is what findings of fact or conclusions of law did the District Court make in its ruling on appeal—either expressly or by necessary implication—that now bind this Court? Here, the appeal was raised in the context of a motion to dismiss for failure to state a claim in which the court assumes the allegations in the complaint to be true rather than making any factual findings. However, it also involved interpretation of a contract, which is a question of law unless the contractual language is ambiguous. *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019); *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1321 (N.D. Ga. 2014).

### C. Legally Possible

First, this Court is bound by the District Court's interpretation of the Agreement. The Agreement requires Defendants to obtain and convey an extension of the property lines for the 8 at 8 site "to the extent it is legally possible." The District Court ruled this means "that the Loudermilk Parties would be excused from performance only if an extension was not possible due to zoning or other regulatory reasons." [Doc. 74 at 22]. The District Court further stated that the

10

Loudermilk Parties had "accepted the risk that Appellee 3110 would not agree to convey this property" so that their failure to obtain the Disputed Property from 3110 would not excuse their performance under the Agreement. [Id.]. As stated above, construction of a contract is a matter of law. And in its order, the District Court expressly stated that it reviewed the bankruptcy court's interpretation of contract provisions de novo. [Id. at 21]. Therefore, the District Court's interpretation of the Agreement is law of the case and subject to the mandate rule. Defendants do not appear to dispute such a conclusion. Instead, they argue that a factual question remains as to whether a regulatory hurdle prevented transfer of the Disputed Property as shown in the 2014 Survey—that is, approval by the City of Atlanta to change the boundaries between tax parcels.

Because Plaintiff has the burden of proof at trial and because Plaintiff is the movant, it must set forth undisputed facts showing it is entitled to judgment as a matter of law. If it fails to do so, Defendants do not have to put up evidence to controvert the facts. If Plaintiff satisfies its burden, then the burden shifts to Defendants to show a genuine issue of material fact.

Here, Plaintiff has set forth undisputed facts showing that the reason Defendants failed to transfer the Disputed Property as depicted on the 2014 Survey was because 3110 was unwilling to do so. [Doc. 120 ¶ 22; Doc. 133 ¶ 22 ("For purposes of this Motion, the Loudermilk Parties do not dispute that … Howard informed Frasier that the shaded area was all the property that 3110 would convey.")]. In his deposition, Howard testified that the only reason he gave Plaintiff for not conveying the Disputed Property as shown on the 2014 Survey was the unwillingness of 3110 to cooperate:

> Q: Did you ever convey any reason other than [Loudermilk Sr.] is not willing to touch the loading dock as explanation for why the Loudermilk parties could not convey the extension running all the way back to Early Street?
>
> A: I don't recall, no, providing any other reason.

[Doc. 115-1 at 30].

Based on these facts, Plaintiff has satisfied its burden to show that Defendants' failure to convey the Disputed Property as shown on the 2014 Survey was not due to any regulation or statute. Therefore, the burden shifts to Defendants to show that facts are in dispute.

Defendants argue that Plaintiff knew the City of Atlanta had to approve a replat of the tax parcels for the Disputed Property "before the conveyance of any deed" [Doc. 132 at 9 (emphasis in original)], that 3110's approval was required for replatting, and that Plaintiff has not sought 3110's approval. Therefore, Defendants argue, "[a]t this point, it is not clear that it is 'legally possible' to obtain replatting." [Doc. 132 at 9]. In support of their argument, Defendants cite a November 20, 2014 email from Busby to Frasier and George Rohrig (the owner of Debtor) in which Busby said, "We need to record a Non-Residential Replat Survey at Fulton County so they will change their Tax Maps to where the 0.075 acres is combined with Rohrig's property to the south. According to the City's regs, you are supposed to have the Replat approved before the 0.075 acres is conveyed." [Id. & Doc. 30-1[1] at 70-71]. Defendants also cite a December 12, 2014 email from Busby to Frasier and Rohrig, in which Busby provided a partially completed replat application and said, "It looks to me like we also will need to have the 3110 owners sign a copy of the Affidavit sheet (Page 3)." [Doc. 132 at 8 & Doc. 30-1 at 86]. The application attached to the email is a "Request for Replatting of Nonresidential Lots" and includes a section titled "Instructions" that lists the required forms, including "Authorization of Property Ownership Form – If more than one owner, a separate form must be signed, dated & notarized by all owners involved." [Doc. 30-1 at 87].

---

[1] Doc. 30-1 constitutes the exhibits to Plaintiff's Amended Complaint.

The Court cannot conclude that Defendants have shown a dispute of material fact. Although Busby said in an email that a replat is supposed to be approved before conveyance of the property according to city regulations and that 3110's approval is required for the replat application, neither Busby nor Defendants cited any city regulation that sets forth such requirements, and the replat application does not reference any applicable city regulation. Furthermore, on March 17, 2015, Defendants tendered to Plaintiff an *executed* limited warranty deed for a portion of the Disputed Property, without any indication that a replat consistent with that deed had been submitted to or approved by the city, or that any such approval was required prior to conveyance. [Doc. 120 ¶ 23; Doc. 133 ¶ 23; Doc. 119-1 at 140-142]. Based on the foregoing, Defendants have not provided enough information to establish a genuine dispute of material fact about the legal possibility of transferring the Disputed Property.

### D. Property Description

Next, this Court must consider whether it is bound by the District Court's ruling on the adequacy of the property description. This Court previously ruled that the Agreement did not sufficiently describe the boundaries of the Disputed Property and that no key for determining the boundaries was in existence at the time the Agreement was entered. [Doc. 54 at 40-47; Doc. 21 at 16-20]. Therefore, the obligation to convey the Disputed Property with Plaintiff's preferred boundaries was not enforceable. On appeal, the District Court said it "concurs that the Settlement Agreement as originally written did not contain a sufficiently definite legal description[.]" [Doc. 74 at 23]. The District Court went on to say that "the bankruptcy court can nonetheless enforce the Loudermilk Parties' obligation to obtain and convey the Disputed Property based on its incorporation of the Settlement Agreement into the Settlement Order." [Id.]. In so ruling, the

District Court noted that the Agreement "did not become operative until after the Settlement Order was entered[.]" [Id.]

In making its determination that the property description was legally sufficient, the District Court assumed as true that "at the time of the hearing [on approval of the Agreement], the survey was in existence and was apparently in possession of all the parties. … At the hearing, no objection was lodged by any party." [Doc. 74 at 23-24]. Those facts have now been established as undisputed: Frasier received the 2014 Survey on November 20, 2014, and sent it to Howard on December 1, 2014. [Doc. 120 ¶ 14; Doc. 133 ¶ 14]. Defendants were represented by counsel at the December 3, 2014 hearing to approve the Agreement, and no objections, disputes, or concerns regarding the property lines were raised.

The District Court ruled in the alternative that any deficiencies in the property description had been cured by "the submission of the Settlement Agreement to the bankruptcy court for approval and the Loudermilk Parties' tender of an unexecuted draft deed[.]" [Doc. 74 at 25 n.7]. These facts have also been established as undisputed. Teague prepared a draft deed with the property lines shown on the 2014 Survey plus a no-build easement. [Doc. 120 ¶ 17; Doc. 133 ¶ 17]. The date Teague prepared the deed is not in the record.[2] However, he forwarded the deed to Howard on December 4, 2014, approximately three hours after the Court entered the Settlement Order. [Doc. 120 ¶ 18; Doc. 133 ¶ 18]. Howard then emailed the deed to Frasier approximately two hours later that day, stating, "I will not be able to provide an executed copy tomorrow, but can provide on Monday." [Id.; Doc. 115-2 at 600].

---

[2] Howard testified in his deposition that he would have instructed Teague on preparing the deed almost immediately after Howard received the 2014 Survey, and that it would have taken Teague a day or two to prepare the deed. [Doc. 115-1 at 13-14, 22]. Defendants' Response to Plaintiff's First Interrogatories to Defendants state that Howard received the 2014 Survey on December 1, 2014. [Doc. 119-1 at 94-95].

Defendants argue that the District Court's order did not establish the sufficiency of the legal description as a matter of law. Defendants argue that the District Court assumed as true the allegation in the Amended Complaint that "Howard transmitted the 2014 … Survey to Mr. Teague so that Mr. Teague could prepared a Limited Warranty Deed whereby 3110 … would convey … [the Disputed Property] as extended and depicted on the 2014 … Survey." [Doc. 132 at 4; Doc. 74 at 24]. But this did not take into account Defendants' side of the story or their affirmative defenses.

Defendants point to Howard's deposition to support their contention that there was never any agreement on the boundaries of the Disputed Property and that Howard did not send the survey to Teague to prepare a deed with lines as shown on the 2014 Survey. Howard testified as follows:

> There was no commitment to extend the property line. There was – in the settlement agreement we agreed to transfer the 8 at 8 property, and in consultation with Rohrig's attorneys and surveyors, and to the extent legally possible, *we would consider any extension* to that property line.
> There was no definitive agreement that – to extend the property line.

[Doc. 115-1 at 11 (emphasis added)].

Howard also testified regarding the 2014 Survey as follows: "It was a survey. It was a proposed survey. It wasn't the final survey. It wasn't the survey that we agreed to. … [I]t was not a survey of what the defendants were able to obtain from 3110." [Id. at 27].

Although not cited in Defendants' Response, Howard also testified:

> I objected once I received this [2014] survey – well, after receiving this survey, and after consulting with my attorneys, there were things that we discussed that were issues with this survey.
> …
> The surveyor prepared a – a proposed survey based off direction from your client [Plaintiff]. It was all subject to our review *with any*

*surveyors or attorneys that we chose*. So this was – this was a draft. It was an initial shot at what the Rohrigs thought would be the appropriate survey.

[Id. (emphasis added)].

Finally, Howard testified that he sent the Draft Deed to Frasier in connection with the Agreement's consultation language:

Q. … You sent the survey, the November 20, 2014 Valentino survey, to Bailey Teague and told him to prepare a deed using it?

A. To prepare a draft deed, correct.

Q. Yeah. That survey was exactly the one that the limited warranty deed that Bailey Teague prepared at your instructions was based on?

A. Well, you can't just look at the survey without also considering the easements that we had talked about that may be required. And so after receiving -- again, we were supposed to consult on the survey. John [Frasier] had it prepared, sent it to me. I consulted with my attorneys, and we identified a number of problematic issues with the way the survey was drawn.

Q. Well, none of those problematic issues got in the warranty deed you had Bailey Teague provide, did they?

A. No.

Q. That deed exactly tracked the November 20th Valentino survey, didn't it?

A. Yes.

Q. So my question is --

A. The draft -- the draft limited warranty deed copied the draft survey.

[Id. at 31].[3]

---

[3] This exchange is inconsistent with Defendants' assertion that "Howard testified … that he did not send the survey to Teague to prepare a deed drawing lines as shown on the survey." [Doc. 132 at 5].

Defendants argue that by Howard's deposition testimony, they have shown a dispute of fact as to whether the parties were in agreement on the location of the property lines. Therefore, the case is not in line with *Scott v. Lester*, 242 Ga. 730, 251 S.E.2d 257 (1978), which was the basis of the District Court's alternative holding in footnote 7. Plaintiff argues that by claiming now for the first time that the Draft Deed was intended as the "consultation" contemplated by the Agreement, Howard is "[r]isibly devising a contradictory story meant to thread its way around the District Court's finding[.]" [Doc. 137 at 6]. However, the Court cannot weigh the evidence or a witness's credibility on summary judgment.[4] Furthermore, these excerpts have allowed Defendants to present their side of the story but do not create a question of fact regarding any assumptions the District Court made in ruling on sufficiency of the property description. The excerpts do not dispute the fact that the Loudermilk Parties had the 2014 Survey at the time of the hearing on approval of the Agreement, that they did not object to approval of the Agreement, and that *they directed preparation of a Draft Deed that followed the property lines on the 2014 Survey* and sent that Draft Deed to Plaintiff.

In analogizing to *Scott*, the District Court said:

> While this case did not involve a subsequent transaction, after the execution of the Settlement Agreement and the completion of the 2014 … Survey, the bankruptcy court approved the Settlement Agreement and the Loudermilk Parties sent Rohrig a draft deed reflecting the survey. … *While the deed was not executed* and Rohrig rejected the deed, the subsequent approval by the bankruptcy court and adoption of the survey's legal description in the draft deed brings this case more in line with *Scott*. At that point, the only

---

[4] As Plaintiff points out, this rule is not absolute. The Supreme Court has said, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007); *see also Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (on a motion for summary judgment, the court may disregard sham affidavits—those that contradict the affiant's prior deposition testimony without explanation—but the court must be careful to distinguish between actual shams and discrepancies that merely raise issues of credibility).

> performance that the bankruptcy court needed to order was directing the Loudermilk Parties to arrange for execution of the draft deed with the no-build easement stricken.

[Doc. 74 at 25 n.7 (emphasis added)]. Given that the District Court made alternative rulings with respect to the sufficiency of the property description and that the facts assumed as true for both rulings have now been established as true, the Court concludes that the mandate rule leaves no room for this Court to rule otherwise. Therefore, the Court concludes that the property description is sufficient.

This conclusion also affects two defenses raised by Defendants. First, Defendants argue that Section 3.0 of the Agreement constitutes an unenforceable agreement to agree because the property lines were not yet established and required a consultation to be established. Second, Defendants argue that because the property lines had not been established, the statute of frauds was not satisfied. Because the Court finds that the Disputed Property was sufficiently described at the time the Agreement was approved, both defenses fail as a matter of law.

### E. Condition Precedent

A third defense raised by Defendants is that the language of the Agreement includes a condition precedent that has not been satisfied. The Agreement provides that "[i]n consultation with Rohrig's surveyors and attorneys … the Loudermilk Parties will obtain ... and convey" a deed to the Disputed Property. Defendants contend that this provision requires the parties to consult and that the "consultation" did not occur. Rather, "Rohrig has simply drawn the property line where it wanted it to be, which is insufficient to satisfy the condition precedent." [Doc. 132 at 10]. Plaintiffs contend that the language of the Agreement imposed on Defendants the duty to consult with Plaintiff's surveyors and attorneys, and that Plaintiff was not subject to any condition precedent to

consult with its own surveyors and attorneys. Neither this Court nor the District Court has previously interpreted the consultation language, such that the mandate rule is not an issue.

"A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." O.C.G.A. § 13-3-4; *Page v. Baylard*, 281 Ga. 586, 587, 642 S.E.2d 14, 16 (2007). The Court looks to the language of the contract to determine whether it contains a condition precedent. *Hall v. Ross*, 273 Ga. App. 811, 813, 616 S.E.2d 145, 147 (2005). Conditions precedent "are created by language such as 'on condition that,' 'if,' and 'provided,' or by explicit statements that certain events are to be construed as conditions precedent.'" *Id.* (internal quotation marks and citation omitted). "Though conditions precedent are not favored in the construction of contracts, where the language of the contract clearly creates such a condition, that condition must be enforced." *Allen v. Sea Gardens Seafood, Inc.*, 290 Ga. 715, 717, 723 S.E.2d 669, 671 (2012).

Here, the language does not create a condition precedent. It contains no conditional language. Furthermore, it does not impose any obligation on the parties to the Agreement or on Plaintiff. The obligation is solely on Defendants to convey the Disputed Property and to do so both in consultation with "Rohrig's surveyors and attorneys" and, as discussed above, to the extent legally possible. Howard testified that he and Frasier arranged to meet Busby[5] the morning of November 20, 2014 at the 8 at 8 site, but that Frasier did not arrive at the appointed time. [Doc. 115-1 at 25]. Howard had wanted the meeting with Frasier "so that we could mutually agree to how the line was laid." [Id. at 26]. Howard further testified that he and Busby had "introductory discussions" but nothing "specific to the survey itself" and that he did not give Busby any direction on preparing the 2014 Survey. [Id. at 25-26]. Howard left before Frasier arrived. [Id. at 26].

---

[5] Howard did not recall the name of the surveyor but did not dispute that it was Busby. [Doc. 115-1 at 25].

Howard testified that Frasier "did not consult with me, our surveyors, or our attorneys prior to producing" the 2014 Survey. [Id.]. Instead, Frasier had the 2014 Survey prepared and sent it to Howard. [Id. at 31]. "I consulted with my attorneys, and we identified a number of problematic issues with the way the survey was drawn." [Id.].

Even assuming Howard's testimony is accurate and credible and construing any inferences in favor of Defendants, it does not change the language of the Agreement. Plaintiff was not required to perform any actions before Defendants were bound to obtain and convey the Disputed Property. Defendants do not contend that Plaintiff's surveyors and attorneys were unavailable for consultation; Howard testified that he met with Busby prior to preparation of the 2014 Survey, and thus had an opportunity to consult. The failure to instruct Busby or to await Frasier's arrival does not create an obligation for Plaintiff under the Agreement, rather it is a failure of Defendants to discharge their obligation under the Agreement. Therefore, the Court finds no merit to Defendants' condition precedent defense.

## IV. Conclusion

Based on the undisputed material facts, Plaintiff has established as a matter of law that the Settlement Order and Agreement was an enforceable contract, that Defendants breached that contract, and that Plaintiff is entitled to complain about the breach. Therefore, Plaintiff is entitled to summary judgment that Defendants are liable to Plaintiff for breach of contract. Accordingly, it is

ORDERED that the Motion [Doc. 118] is GRANTED. Damages for breach of contract and Plaintiff's claim for fraud remain to be decided.

**END OF ORDER**

## **Distribution List**

Joseph J. Burton, Jr.
Mozley, Finlayson & Loggins, LLP
Suite 1500
1050 Crown Pointe Parkway
Atlanta, GA 30338

Rickman Brown
Anderson Dailey, LLP
3151 Maple Drive, NE
Atlanta, GA 30305

Stephen Anderson
Anderson Dailey LLP
3151 Maple Drive NE
Atlanta, GA 30305

Sean A. Gordon
Greenberg Traurig, LLP
Terminus 200 - Suite 2500
3333 Piedmont Road, NE
Atlanta, GA 30305

Michael J. King
Greenberg Traurig, LLP
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, GA 30305